JOSEPH PENN

*v.*

JAMES A. BORNMAN *et al.*

*Filed at Mt. Vernon January 18, 1882—Rehearing denied May Term, 1882.*

1. CONTRACT—*legality.* The general rule is, that all contracts made in violation of an express statutory provision are inoperative and void, and no recovery can be had upon them though the defendant is a party to the violation of the law, in the absence of fraud or bad faith on his part upon which to found an estoppel.

2. SAME—*loan by bank to a director in violation of its charter, is illegal.* Under a provision in a bank charter that "no director of said corporation shall be indebted to said corporation, either directly or indirectly, or individually, at any time, to an amount greater than seventy-five per centum of the capital stock held by such director, in good faith as his own," it is *held*, that a director can not enter into a valid contract with the bank, as guarantor or indorser, without regard to his ownership of stock and in violation of such provision, and no recovery can be had by the bank under such a contract

against him or his·estate. The prohibition in such case applies to the bank as well as to the directors.

3. The distinction in some of the old cases between *malum prohibitum* and *malum in se* has long since been exploded, and the rule is now well established that no agreement to do an act forbidden by statute, or to omit to do an act enjoined by statute, is binding.

4. A provision in a bank charter prohibiting the directors from becoming indebted to the bank, is not purely personal to the directors, but it is equally a mandate to the bank, which it is as much bound to observe as the directors themselves. It goes directly to the power or capacity of both the bank and directors to enter into any engagement or agreement by which the latter may become indebted to the former.

5. CONFLICT OF LAWS—*rulings of Supreme Court of United States— when not binding on this court.* The decisions of the Supreme Court of the United States, while entitled to great respect, are not of binding authority on this court in the construction of one of our own statutes, especially when such construction is at variance with the previous decisions of this court.

APPEAL from the Appellate Court for the Fourth District;— heard in that court on appeal from the Circuit Court of St. Clair county; the Hon. GEO. W. WALL, Judge, presiding.

Mr. R. A. HALBERT, Mr. E. L. THOMAS, and Mr. C. F. NOETLING, for the appellant:

The directors of a bank are not the corporation itself, but the agents, and in a certain sense trustees. A trustee or officer of a bank who has committed a breach of trust, can not avail himself of a provision designed to prevent such breach, in order to defeat a recovery of money obtained by him or through him in violation of his trust. *Richmond Bank* v. *Robinson,* 42 Maine, 589; *Bond* v. *Central Bank,* 2 Ga. 92; *Smith* v. *Bank,* 18 Ind. 328; *Lester* v. *Howard Bank,* 33 Md. 558; *O'Hara* v. *National Bank,* 77 Pa. 96; *Bly* v. *National Bank,* 79 id. 453; *Allan* v. *Freedman's Bank,* 14 Fla. 413; *Little* v. *O'Brien,* 9 Mass. 423; *Bates et al.* v. *Bank of Alabama,* 2 Ala. 460; *Bemus* v. *Becker,* 2 Kan. 229; *Hughes* v. *Bank of Somerset,* 5 Litt. (Ky.) 46; *Shoemaker* v. *National Mechanics' Bank,* 2 Abbott, (U. S.) 416; *Stuart* v. *National Bank,* id. 424; *Bank of the United States* v. *Dandridge,* 12

Wheat. 64; *Fire and Marine Bank of Milwaukee* v. *Detroit and Milwaukee R. R. Co.* 17 Wis. 372; *Bissell* v. *Michigan Southern R. R. Co.* 22 N. Y. 258; *Commercial Bank of Manchester* v. *Nolan*, 7 How. 508; *Banks* v. *Poitiaux*, 3 Rand. 136; *Planters' Bank* v. *Sharp*, 4 Smedes & M. 74; *Grand Gulf Bank* v. *Ardu*, 8 id. 151; *Fleckner* v. *Bank of the United States*, 8 Wheat. 338; *Steam Navigation Co.* v. *Weed*, 19 Barb. 375; *White* v. *Franklin Bank*, 22 Pick. 186; *Mott* v. *United States Ins. Co.* 19 Barb. 568; *Chester Glass Co.* v. *Dewey*, 16 Mass. 102; *Silver Lake Bank* v. *North*, 4 Johns. Ch. 370; *Littlewort* v. *Davis*, 50 Miss. 403; *Germantown Farmers' Mutual Ins. Co.* v. *Dhein*, 43 Wis. 420; *Bank* v. *Hammond*, 1 Rich. Law, 281; *Anglo Australian Life Ass. Co.* v. *Life and Fire Society*, 3 Griff. 53; *Rock River Bank* v. *Sherwood*, 10 Wis. 230; *Viazil Bank* v. *Paulk*, 40 Maine, 109; *Philadelphia Loan Co.* v. *Towner*, 13 Conn. 244; *Burns* v. *Railroad Co.* 9 Wis. 457; *Sacketts Harbor Bank* v. *Lewis County Bank*, 11 Barb. 213; *McCutchem* v. *Steamboat*, 13 Pa. 13; *Union Hill Gold Mining Co.* v. *Rocky Mountain National Bank*, 96 U. S. 640; *Elder* v. *First National Bank of Ottawa*, 12 Kan. 238; *Bradley* v. *Bank of State*, 20 Ind. 528; *Southern Bank* v. *Williams*, 25 Ga. 534; *Harris* v. *Runnels*, 12 How. 79; *Jack* v. *The People*, 19 Ill. 57; *Manufacturing Co.* v. *Carny*, 54 N. H. 321; *United States Trust Co.* v. *Brady*, 20 Barb. 121; Field on Corporations, secs. 263–268; Angell & Ames on Corporations, sec. 264; 2 Chitty on Contracts, 976; Morse on Banking, 16, 561; Herman on Estoppels, sec. 580; *National Bank* v. *Case*, 99 U. S. 633.

Messrs. HAY & KNISPEL, also for the appellant:

One who has borrowed money of a bank, can not defeat a recovery against him for the same on the ground that the bank, in making the loan, exceeded its corporate powers, or acted otherwise improperly or illegally. Morse on Banking, 16; *Bank of Middlebury* v. *Brigham*, 33 N. H. 621; *Bradley*

v. *Bank of State,* 20 Ind. 528; *Bates* v. *State Bank,* 2 Ala. 451; *Bend* v. *Bank of Georgia,* 2 Kelly, 92; *Parish* v. *Wheeler,* 22 N. Y. 494; *Smith* v. *Bank of State,* 18 Ind. 527; *Planters' Bank* v. *Sharp,* 4 Smedes & M. 75; *Shoemaker* v. *National Mechanics' Bank,* 2 Abbott, (U. S.) 416; 31 Md. 396; *Stewart* v. *National Union Bank,* 2 Abbott, (U. S.) 424; *Elder* v. *First National Bank,* 12 Kan. 238; *Allison* v. *Hubbell,* 17 Ind. 559; *Southern Bank* v. *Williams,* 25 Ga. 524; *Moreland & Willis* v. *State Bank,* Breese, 264; *Lester* v. *Howard Bank,* 33 Md. 558; *Richmond* v. *Robinson,* 42 id. 589; *Cannon* v. *McNab,* 48 Ala. 49; *Allen* v. *Freedman's Savings and Trust Co.* 14 Fla. 418; *O'Hara* v. *Second National Bank,* 77 Pa. St. 96.

Messrs. WILDERMAN & HAMILL, for the appellees:

Sec. 11, of the charter of the People's Bank of Belleville, (vol. 1, Private Laws 1869, p. 194,) reads: "No director of said corporation shall be indebted to said corporation, either directly or indirectly, or individually, at any time, to an amount greater than seventy-five per centum of the capital stock held by such director in his own name, in good faith as his own."

That the language of the act is imperative, and not merely directory, counsel cited *Pearce* v. *Morrice,* 2 Ad. & Ellis, 84; *New York Fireman's Ins. Co.* v. *Ely,* 5 Conn. 560; *DeGroot* v. *Van Duzer,* 20 Wend. 390; *In re Jaycox et al.* 12 Blatch. Ch. 209; *Leavitt* v. *Yates,* 4 Edw. Ch. 182; *Swift* v. *Beers,* 3 Denio, 70; *Wheeler* v. *Russell,* 17 Mass. 258; *Miller* v. *Post,* 1 Allen, 434.

All contracts made in violation of the terms of a negative prohibitory statute, imperative in its character, are void. *Linn* v. *State Bank,* 1 Scam. 87; *Munsell* v. *Temple,* 3 Gilm. 96; *Nash* v. *Monheimer,* 20 Ill. 217; *Bester* v. *Wathen,* 60 id. 138; *Linder* v. *Carpenter,* 62 id. 309; *Lewis* v. *Headley,* 36 id. 433; *Mutual Health Association* v. *Rosenthal,* 55 id. 85; *Carroll* v. *City of East St. Louis,* 67 id. 568; *Starkweather*

v. *American Bible Society*, 72 id. 50; *Metropolitan Bank* v.
*Godfrey*, 23 id. 579; *Village of Dwight* v. *Palmer*, 74 id. 295;
*Bank of the United States* v. *Owens*, 2 Pet. 527; *Tiffany* v.
*Boatmens' Savings Institution*, 18 Wall. 384; *Rust* v. *Wallace*,
4 McLean's Ch. 8; *Davis* v. *Bank of River Raisin*, id. 387;
*McLean* v. *Lafayette Bank*, 3 McLean, 587; *Root* v. *Goddard*,
id. 102; *Bank of Chillicothe* v. *Swayne*, 8 Ohio, 257; *Creed*
v. *Commercial Bank*, 11 id. 489; *Creed* v. *Reed*, 11 id. 498;
*Spalding* v. *Bank of Muskingum*, 12 id. 544; *Miami Export-
ing Co.* v. *Clark*, 13 id. 1; *Bank of Wooster* v. *Stevens*, 1
Ohio St. 233; *Preble County Bank* v. *Russell*, id. 313; *Orr* v.
*Lacey*, 2 Doug. 230; *Hulbert* v. *Britain*, id. 191.

Counsel also cited *Law* v. *The People*, 87 Ill. 385; *Fuller*
v. *Chicago*, 89 id. 282; *East St. Louis* v. *East St. Louis Gas
Light and Coke Co.* 98 id. 415; *State Board of Agriculture* v.
*Citizens' Horse Ry.* 47 Ind. 407; *Lyons* v. *Orange A. and M.
R. R. Co.* 32 Mo. 18; *Buchanan* v. *Litchfield*, 102 U. S. 278.

Mr. JUSTICE MULKEY delivered the opinion of the Court:

This is an appeal from the Appellate Court for the Fourth
District, affirming a judgment of the circuit court of St. Clair
county, disallowing a claim of $120,000, in favor of Joseph
Penn, as assignee of the People's Bank of Belleville, against
the estate of Conrad Bornman, deceased.

We do not deem it necessary to make an extended state-
ment of the facts of this case in order to present our views
upon the legal question which controls it. We say question,
for in the view we take of the case the whole controversy
turns upon a single controverted point. It is sufficient to
state, generally, that in 1874 the Belleville Nail Mill Com-
pany borrowed of the People's Bank of Belleville a large
amount of money, including the sum in controversy. This
loan was evidenced by a number of instruments in the form
of inland bills of exchange, most of which were drawn by
Conrad Bornman and James C. Waugh, as president and

secretary, respectively, of the Belleville Nail Mill Company, upon and accepted by F. H. Pieper, as the company's treasurer, and were indorsed in blank by Bornman and Waugh. The others were drawn by Waugh and Bornman upon Pieper, as treasurer, in the same way, the only difference being, the latter were payable to Bornman as president, and by him indorsed to the bank. These instruments were renewed from time to time, until finally the company became insolvent, and Bornman died, leaving the matter unsettled, when they were presented for allowance against his estate, with the result already stated. It further appears, that at the time of borrowing the money, and of the execution of the instruments in question, Bornman and Pieper were directors of the bank, the latter being also its president, and that the charter of the bank contained a provision declaring that "no director of said corporation shall be indebted to said corporation, either directly or indirectly, or individually, at any time, to an amount greater than seventy-five per centum of the capital stock held by such director in his own name, in good faith as his own."

No question is made as to the power or right of the company to borrow, or of the bank to lend, the money, nor is the supposed liability of Bornman's estate placed upon the ground that he was a stockholder of the bank to the amount of the indebtedness at the time it is claimed to have occurred; but the simple inquiry is, could Bornman, being a director of the bank, notwithstanding the absolute prohibition in its charter, without regard to his ownership of stock, enter into a valid contract with it as guarantor or indorser of the Nail Mill Company's paper,—or, in other words, could the bank, in palpable violation of this express prohibition in its charter, go on and contract, *ad libitum*, with its directors, and yet be permitted to recover, just as though its charter contained no such provision? We put the question in this form for the reason we see no special circumstances in the case that take

it out of the general rule that all contracts made in violation of an express statutory provision are inoperative and void, and no recovery can be had upon them.

Upon a careful examination of the · record we have been unable to discover any evidence of overreaching, fraud or bad faith on the part of Bornman upon which to found an estoppel, or, indeed, anything exceptionable in his conduct at all, outside of the simple fact that he, like the bank, was a party to an agreement prohibited by its charter, and if this of itself affords matter of estoppel which deprives his legal representatives of the defence of illegality in the contract, it is manifest such a defence could not successfully be interposed in ·any case where the agreement, as in this case, is simply prohibited by statute, and to so hold would, under the pretense of construction, be in effect abrogating that provision of the charter by judicial legislation.

In 2 Parsons on Contracts, p. 186, the author, in discussing the illegality of a contract as a defence, says: "That the illegality of a contract is in general a perfect defence must be too obvious to need illustration. It may be regarded as an impossibility by act of law, for it would be absurd to punish a man for not doing, or, in other words, to require him to do, that which it forbids his doing." Strictly speaking, there can be no such a thing as an illegal contract. Viewed from a purely legal aspect, it is manifestly a contradiction of terms, for it is an elementary and fundamental principle of the law of contracts that the agreement between the parties must be one which the law permits to be made, or, in other words, it must be a lawful agreement. Bush on Contracts, sec. 458.

Anson, in his work on Contracts, p. 144, says: "A statute may render an agreement illegal in one of two ways,—by express prohibition, or by penalty. It may say, in so· many words, that contracts of a certain sort are illegal or void, or both, and where it thus expressly avoids a contract, or makes

it illegal, no doubt can arise as to the intention of the legislature." The case in hand falls within the first class mentioned by this author. It is illegal by reason of being expressly prohibited, and therefore leaving no question as to the intention of the legislature. Where the legislature has simply denounced a penalty against the thing agreed to be done, then the prohibition is a matter of legal inference, which has given rise to a number of very nice distinctions, about which the authorities are by no means in harmony, and which are unnecessary to be noticed here, as they have no application to the question before us. Those cases which hold that where a penalty only has been imposed, both the agreement and penalty may be enforced, have the merit, at least, of giving the statute some effect; but where the thing agreed to be done is simply prohibited without the imposition of a penalty, and the agreement is nevertheless enforced, it is manifest the statute is given no effect whatever. As before stated, such a construction simply abrogates it.

In 5 Robinson's Practice, p. 398, the author says: "It is clear no right of action can spring out of an illegal contract,— that no action will lie upon a contract made in violation of a statute, or of a principle of the common law."

The distinction in some of the old cases between *malum prohibitum* and *malum in se*, has long since been exploded, both in this country and England. *Cannon* v. *Bryce*, 3 Barn. & Ald. 179, (5 Eng. C. L.); *Aubert* v. *Maze*, 2 Bos. & Pul. 371; *Bank of United States* v. *Owens*, 2 Peters, 539. In the latter case it is said by Johnson, J.: "There can be no civil right where there can be no legal remedy, and there can be no legal remedy for that which is itself illegal."

In 7 Wait's Actions and Defences, p. 64, it is said: "The rule is now well established that no agreement to do an act forbidden by statute, or to omit to do an act enjoined by statute, is binding,"—citing *De Begins* v. *Armistead*, 10 Bing. 110; *Cope* v. *Rowlands*, 2 Mees. & W. 153; *D'Allex* v. *Jones,*

37 Eng. L. & Eq. 476; *Clark* v. *Protection Ins. Co.* 1 Story's C. C. 109; *Kottwitz* v. *Alexander*, 34 Tex. 689; *Coburn* v. *Odell*, 30 N. H. 540; *Milton* v. *Hoden*, 32 Ala. 30; *McWilliams* v. *Phillips*, 51 Miss. 196; *Hooker* v. *De Palos*, 28 Ohio St. 251; *Durgin* v. *Dyer*, 68 Me. 143. Upon this general proposition the authorities might be multiplied almost indefinitely.

*Linn* v. *State Bank of Illinois*, 1 Scam. 87, was an action of debt, brought by the bank against Linn, upon a note given by him to the bank in consideration of a loan of its notes or bills, which had been issued and emitted, under its charter, in contravention of the 10th section of article 1 of the constitution of the United States, and it was held there could be no recovery. Here, the illegal act was prohibited by a constitutional provision, but there is no difference in this respect between a statutory and constitutional prohibition, provided the legislature acts within the scope of its authority.

*Nash* v. *Monheimer*, 20 Ill. 215, was an action brought on a wager upon the speed of a certain horse, which was tested in presence of the parties within the corporate limits of a city, and it was held there could be no recovery, on the ground the trial of the speed of the horse within the corporate limits of the city was forbidden by ordinance. In this case the court, referring approvingly to *Armstrong* v. *Taylor*, 11 Wheat. 258, says: "And the rule was laid down by the Supreme Court of the United States, that where the contract grows immediately out of, and is connected with, an illegal or immoral act, a court of justice will not lend its aid for its enforcement."

The case of *Lewis* v. *Headley*, 36 Ill. 433, holds there can be no recovery upon a promissory note, given in consideration of the bills of a foreign bank, of a less denomination than five dollars, to be used and circulated by one of our own banks in contravention of a statute of this State forbidding the circulation of such bills. This will be found a very strong case against the right of recovery by appellant in the case

before us. The maker of the notes sued on had accepted and received as money the small notes of the foreign bank, and had fully enjoyed the benefits of them as of so much money, and he was without question equally guilty with the plaintiff in violating the statute forbidding the circulation of such notes, and yet, in conformity with the well settled rule on this subject, it was held there could be no recovery.

*The Cincinnati Mutual Health Assurance Co.* v. *Rosenthal*, 55 Ill. 85, was an action brought by the company upon a note given by the defendant "for stock in the company, and for premium, subject to the call of the directors of the company," and it was held there could be no recovery, on the ground the company was a foreign corporation, and had commenced business in violation of the statute which forbids all foreign insurance companies from doing business here until the requirements of the law applicable to such companies have been complied with. In this case it is said: "When the legislature prohibits an act, or declares it shall be unlawful to perform it, every rule of interpretation must say that the legislature intended to interpose its power to prevent the act, and, as one of the means of its prevention, that the court shall hold it void. This is as manifest as if the statute had declared that it should be void. To hold otherwise would be to give the person or corporation the same rights in enforcing prohibited contracts as the good citizen who respects and conforms to the law."

The case of *Starkweather* v. *American Bible Society*, 72 Ill. 50, may be referred to as illustrative of the strictness with which this court has uniformly held corporations, as well as individuals, to an observance of the legislative will. In that case it was held a statutory provision of the State of New York prohibiting a corporation of that State from taking land by devise, would be binding on such corporation here, whether the laws of this State permitted such a devise or not. It was insisted in that case that the prohibition was personal

to the testator, and as statutory laws can have no extra-territorial force, a testator residing in this State could not be affected by the provision in question.   But that view was not accepted.   On the contrary, it was held the prohibition directly affected the capacity of the company to take lands by devise. So we hold, in the present case, that the provision in the bank's charter prohibiting the directors from becoming in-debted to the bank is not merely personal to the directors, but that it is equally a mandate to the bank, which it is as much bound to observe as the directors themselves.   Indeed, it goes directly to the power or capacity of both the bank and directors to enter into any engagement or agreement by which the latter may become indebted to the former.   Any other construction would render the provision of the charter entirely inoperative.

*The Village of Dwight* v. *Palmer*, 74 Ill. 295, was a case in which the defendant, being the clerk of the municipal board, entered into a contract with the village to publish the ordinances of the board, and by some contrivance or misunderstanding he obtained from the village treasurer the compensation he was to receive, before performing the labor. The board, being dissatisfied with his course, passed a reso-lution annulling the contract, and ordering him to refund the money, which he refused to do, but went on and performed the contract, or at least a part of it.   The village thereupon brought an action to recover back the $300, on the ground that the original contract was void, by reason of being pro-hibited by the general Incorporation act of 1872, under which the village was organized, and it was held the action was properly brought, for that reason.   This case, in principle, is much like the one before us.   The provision of the statute under which the contract between the village and Palmer was held void, is as follows: "No officer shall be directly or indirectly interested in any contract, work or business of the city, or in the sale of any article, the expense, price or con-

sideration of which is to be paid from the treasury, or by any assessment levied by any act or ordinance." In disposing of this case, Mr. Justice Scott, speaking for the court, said: "This provision is made to apply to villages as well as cities organized under that law. The appellee, being himself a village officer, could make no contract with the trustees to do work for the corporation, to be paid out of the treasury, and hence the alleged contract for printing the ordinance was absolutely void. It was a work of supererogation on the part of the trustees to attempt to rescind it. It had no binding force at all, and whatever was done by appellee under it was done without any authority from the village."

In conformity with the rule so strictly adhered to in the foregoing cases, it was held in *Fridley* v. *Bowen,* 87 Ill. 151, that a mortgage taken by a national bank to secure a present loan, was, by implication, prohibited by the general Banking act of the United States, and was therefore void. It is true the Supreme Court of the United States has reached a contrary conclusion upon this question, and while we concede the paramount authority of that court to construe all Federal statutes, including the National Bank act, yet when that court, in construing such a statute, reaches a conclusion which is believed to be in direct conflict with the most approved text books, and to be opposed to an almost unbroken current of judicial decisions in this country and England, however great our respect may be for the unquestioned learning and ability of that distinguished tribunal, we can not accept such conclusion as binding authority in construing one of our own statutes, especially when such construction is manifestly at variance with the previous decisions of this court.

While, therefore, we do not feel at liberty to follow *Fridley* v. *Bowen, supra,* in its construction of the National Bank act, yet we fully approve of the general principles announced in it as applicable to analogous cases arising under our own

statutes, and we regard what was there said as particularly applicable to the case in hand. Moreover, the reasoning of the court in that case is believed to have been in perfect accord with the current decisions of the Federal courts at that time. *Bank of United States* v. *Owens, supra; Tiffany* v. *Boatman's Savings Institution,* 18 Ware, (S. C.) 384. Many cases, indeed, might be cited in support of this statement, but it is not important to do so.

*Law et al.* v. *The People ex rel.* was a case involving the construction of the first clause of the 12th section of article 9 of the present constitution, which forbids any "county, city, township, school district or other municipal corporation from becoming indebted, in any manner or for any purpose, to an amount, including existing indebtedness, in the aggregate exceeding five per centum on the value of the taxable property" of such municipality. It appeared in that case that the city of Chicago, being already indebted to the full amount of this limitation, issued certificates of indebtedness to secure temporary loans to meet the pressing necessities of the city, and it was held that such certificates were invalid, on the ground the city, by reason of this express prohibition, had no power to incur the indebtedness represented by them. Here, although the city had had the full benefit of the loan represented by these certificates, still there could be no recovery, for the reason there was no power on the part of the city to contract the indebtedness. If supposed hardships would justify courts in disregarding plain statutory or constitutional provisions, this, perhaps, would have been a very appropriate case for the court to interpose, but no considerations of this kind were permitted to prevail. 87 Ill. 385.

*Fuller* v. *City of Chicago et al.* 89 Ill. 282, is, in its facts, substantially the same as the case just considered, and a similar conclusion, founded on the same reasons, was reached.

In the light of these cases, and many others that might be cited, we can not escape the conclusion that by reason of the

prohibition in the bank's charter there was a total want of power, both on the part of the bank and of Bornman, to so contract as to create an indebtedness from the latter to the former, and hence the circuit court properly disallowed the claim of appellant against Bornman's estate.

A very able and exhaustive argument has been made in this case by appellant's counsel, in which numerous authorities have been cited which are claimed by counsel to be at variance with the view here presented. It may be admitted that a few of them are, but it is believed that most of them are not, and may be readily distinguished from the cases we have cited, and such as can not we do not regard as sound on principle, and therefore decline to follow them. It was our purpose at the outset to review at least the most important of them, but we perceive that our discussion of the subject has already been extended to an unwarrantable length, and we must therefore content ourselves with the above statement of our conclusions with respect to them, and we do this the more readily because we regard the question upon which this case turns as being fully and definitely settled by the previous decisions of this court, whatever might be said with reference to the decisions of other courts.

The judgment of the Appellate Court is affirmed.

*Judgment affirmed.*

Mr. JUSTICE DICKEY, dissenting:

This statute was not passed for the protection of directors, but for the protection of stockholders and creditors of the bank. In my judgment it can not properly be invoked in defence of a director against the recovery from him, upon his guaranty of payment, of money unlawfully procured from the bank by means of his own unlawful act.

It is no doubt laid down as a general rule that "no right of action can spring out of an illegal contract," and that "no action will lie upon a contract made in violation of a

statute," and that "a contract founded on an act prohibited by statute is void." This general rule, when applied to contracts which are simply prohibited, and are not declared by statute to be void, rests entirely upon the ground that holding such contracts to be void is the best mode which courts can adopt to give effect to the statute, and to accomplish the end intended by the statute, upon the ground that by so doing courts can best enforce obedience to the statute. The result is reached in all such cases by *construction*, and *that* construction is adopted which will most effectually accomplish the intention of the law-maker.

In Sedgwick on Statutory and Constitutional Law, it is said: "The principle which enforces obedience to the laws is carried out by declaring contracts growing out of, or based upon, the infringement of a statute, to be void, the courts refusing to aid either party in enforcing the contract;" and it is added, that "this is the general course of decisions in England and in this country."

This being the foundation of this general rule, it seems to follow that in cases where holding the contract to be absolutely void will not tend to the enforcement of the statute, this general rule can have no proper application. In Wait's Actions and Defences, p. 65, it is said of this general rule, it is not "applicable where the contract is prohibited for the *mere* protection of one of the parties against an undue advantage which the other is supposed to possess." And it is added, (p. 68,) that "in *every instance* courts will look to the language and subject matter of the statute, the wrong or evil which it seeks to remedy or prevent, and the purpose sought to be accomplished by the enactment, and *if*, from all these, it is manifest that it *was not intended* to render the prohibited act void, the courts will so hold, and construe the statute accordingly."

Applying these tests, which are entirely in harmony with the principles upon which the general rule rests, it seems

obvious that the contract in this case ought not to be declared absolutely void. By the language of the statute the prohibition is expressly directed to the director, and to no one else. The wrong or evil which the statute seeks to remedy or prevent consists in the practice of directors (having the control of the loans to be made by the bank, and taking advantage of their fiduciary position,) in lending to themselves other people's money, with an eye to their private interests, rather than that of the stockholders or creditors. The purpose sought to be accomplished by the statute was to put an end to such practices by directors.

In view of all these considerations, can it be said it was the intention of the statute to provide that in case of a violation of the statute, instead of a penalty being imposed upon the offending director, the director should have a shield of immunity thrown around him, protecting him from an action brought to repair the wrong done in violating the statute? This does not seem possible. To hold this defence good is to hold that the legislature intended by this statute to leave it in the power of the directors of this bank to lend to each other all the money of the bank, and to provide that having so borrowed the same, no action for the debts so incurred could be maintained against either of them to recover the money back for the use of stockholders or creditors. No such intention should be attributed to the General Assembly.

Let it be remembered that in all cases where contracts prohibited by statute have been, on that ground, declared void, the result is reached *by construction*, and that such construction rests upon the principle that such ruling enforces obedience to the statute. If, therefore, the case and the statute be such that such ruling does not tend to enforce obedience to the law, no such construction can be indulged. It seems manifest that it would tend much more strongly to the enforcement of this statute to hold that the contract in question is in its nature voidable, but not void; that the bank

may either repudiate the contract, and avoid the same, or adopt and enforce it, as may be best for the interests of its stockholders or creditors; that as against the director the contract is valid, while as against the bank it is voidable. Upon that view, should the officers of the bank lend to one of the directors, in violation of this enactment, a sum of money for five years, taking notes and personal security for the same, the bank might, under such circumstances, repudiate the contract, and sue for and recover the money at once, or, if more to its interest, might avail itself of the contract as the best means of recovering its money. This would seem a better mode, if the end sought be to promote the object of the statute,—would seem to be more in consonance with the intention of the law-maker,—and a mode much better calculated to enforce obedience to the statute.

There is a general rule that a contract to do that which a statute forbids is void, and so is a contract to omit to do that which a statute requires. This rule may have no exceptions. The case at bar, however, does not fall within that rule. The statute prohibits the director from *incurring the debt.* It does not prohibit its payment. It can not be said that Bornman could have violated any statute by paying this debt. His promise to so pay, then, is not a contract to do that which the statute forbids.

Without discussing in detail the many cases where prohibited contracts have been held void, it is thought sufficient to say that an analysis of each will show that in most, and it is believed in all, it will be found that the nature of the case and the statute was such that the enforcement of the statute, and the accomplishment of the purpose of the statute, was apparently more effectually promoted by holding the contract in question a nullity. Such cases afford no support for the decision in this case, which, in its effect, tends to encourage the violation of the statute.

Again, this contract is prohibited "for the mere protection of one of the parties against the undue advantage which the other is supposed to possess.". This statute is obviously passed "for the mere protection" of the bank "against the undue advantage which" the director "is supposed to possess." In such case, it is well said, the general rule is not applicable. A director who has violated this law, in a transaction to which he is a party personally on one side, and on the other as the agent of the other party,. acting for that principal, can not be allowed to say that his principal (the bank) is *in pari delicto.* Let directors understand that by such transactions they may incur liabilities, but can gain nothing as against the bank,—that they have everything to lose and· nothing to gain,—and then its violation will be rare. But ·say to them that by such transactions you can incur no liability to pay the debt, and the inducement to them to do that which the statute forbids is much greater than if the statute had never been passed.

Mr. CHIEF JUSTICE CRAIG, and Mr. JUSTICE SHELDON, concur in this dissenting opinion.