# Albert G. Wheeler v. Mutual Reserve Fund Life Association.

1. CONTRACTS—*Recovery Under. by Parties in Pari Delicto—Gaming Policies.*—Under a contract of insurance made in express violation of law, the nature of which is known to both the insured and the insurer, no recovery can be had.

2. INSURANCE—*Recovery of Premiums Paid by Parties to Wager Policies.*—Where a policy of insurance is void for the reason that it is expressly prohibited by the statute, and its illegality appears upon the face of it and is known to the parties, there can be no recovery of the premiums paid upon it.

3. SAME—*What is Not an Illegal Contract of.*—The statute, (section 8 of the act of 1883, Laws 1883, p. 107, Sec. 8,) has no application to a foreign insurance company doing business in this State by comity, and under a general statute which does not require it to comply with the provisions of such statute, and a policy issued by such a company is not an illegal contract, if authorized by the law of the State where such company is incorporated.

4. CORPORATIONS—*Powers of, When Doing Business in Other States.*—Where there is no statute prohibiting a corporation from doing business in a State other than that of its incorporation, it may make the law of the State of its incorporation applicable to contracts made by it; but where the laws of the State in which it is doing business prohibit such corporation from making certain kinds of contracts, it can only act in accordance with such law.

5. SAME—*Effect of a License to do Business.*—A statutory license authorizing a foreign corporation to do business within the State does not alter the charter of such corporation but merely gives it a legal right to do business pursuant to its constitution outside of the State by which it is chartered.

6. TONTINE PROVISIONS—*Of Insurance Policies, When to be Treated as Surplusage.*—The fact that tontine provisions in a policy on life insurance are void because they contravene the statute, does not invalidate the policy as a whole.

Assumpsit, on a policy of life insurance. Appeal from the Circuit Court of Cook County; the Hon. EDWARD P. VAIL, Judge presiding. Heard in this court at the October term, 1901. Affirmed. Opinion filed May 5, 1902.

**Statement by the Court.**—This was assumpsit by appellant against appellee, the declaration being the common counts, and the pleas general issue and five years statute

of limitations, with a replication traversing the latter plea. A trial before the court resulted in a finding for the defendant and judgment thereon for costs against the plaintiff, from which this appeal is taken.

The hearing was had upon stipulated facts in substance as follows:

The defendant is not now and never has been incorporated under the laws of the State of Illinois, but it is, and has been, during all the times covering the transactions involved in this suit, doing business in said State as a co-operative or assessment life assurance association, since July 13, 1883, under the laws of the State of Illinois adopted from time to time, regulating the business of life insurance on the assessment plan by associations existing under the laws of other states. It further appears that the exhibits 6, 7 and 8, hereto attached, are true and correct copies of the several policies of insurance, or certificates of membership, issued to and received by the plaintiff from the defendant, and that the dates thereon are correct; that exhibit 9, hereto attached, is a true and correct copy of the application upon which said policies were respectively issued, and that the dates of the application and the delivery thereof are correct. The plaintiff paid to the defendant on account of said several alleged policies the following sums of money at the times and on the policies as shown by exhibit 11, hereto attached; that each and all assessments were made for dues and mortuary assessments, duly and regularly levied and made; that at the time of the issuance and delivery to the plaintiff of the said policies, the plaintiff was a citizen of the State of Illinois and residing in said State in the city of Chicago, county of Cook; that he signed his application for said policies at the said city of Chicago, and delivered the same to the local soliciting agent of the defendant at the last named city; that such soliciting agent forwarded such application to the home office of the defendant at the city of New York, where the same was passed upon and considered by the proper officers or agents of the defendant and by them approved; that thereupon said pol-

icies, or certificates, were written, signed and executed in said city of New York by the proper officials of the defendant, and said certificates or policies were then sent by the defendant by mail to its soliciting agent in the said city of Chicago, and in said last mentioned city delivered to the said plaintiff; that the plaintiff for more than five years after the issuance and delivery of said policies or certificates to him, as aforesaid, paid his annual dues and mortuary calls thereon to the local agent in the said city of Chicago, and such local agent forwarded to the defendant the amount of such dues or calls from time to time as the same were respectively paid by the plaintiff to him; that for a period of about three years, beginning about 1895, plaintiff was a resident of the city of New York, and during that period paid his dues and calls on said policies or certificates in said city of New York; that about 1898 he again became a resident of said city of Chicago, and from that time on paid his dues and calls to such local agent of the defendant in said city of Chicago in the manner hereinbefore stated. The policies of insurance between Albert G. Wheeler as the insured, and Mutual Reserve Fund Life Association as the insurer, marked Exhibits 6, 7 and 8, were, two for the sum of $10,000 each, and the last for $5,000. In all of the three policies the beneficiary is Cassie G. Wheeler. The terms and conditions of all three policies are identical, except that the dues and mortuary calls on the policy for $5,000 are correspondingly less; on all of the three policies on the inside of the first page occur the following provisions:

Under clause II:

: " Twenty-five per cent of the net receipts from mortuary premiums paid under this certificate or policy of insurance, during a period of fifteen years from its date, shall be added to the reserve or emergency fund, which shall be held as provided in the constitution or by-laws of the association," etc.

Under clause III, on the same page, appears the following:

" The annual mortuary premiums on this certificate or

Wheeler v. Mutual Reserve Fund Life Ass'n.

policy of insurance, after the same has been in force fifteen years from its date, shall not include any further contribution to the reserve or emergency fund, nor shall the net amount of such annual mortuary premiums thereafter exceed the annual premiums by the actuary's table of mortality, or the actual mortality experience of the association.

And after the expiration of the fifteen years there shall be credited to this certificate or policy of insurance, if then in force, the equitable proportion of the then total surplus reserve, or emergency fund accumulations, in which this certificate or policy is then entitled to participate, including participation of the contribution to such surplus or emergency fund under this certificate or policy, and also in the then equitable share of such reserve, or emergency fund, accumulations, contributed thereto by members (otherwise participating), whose policies have terminated by death, expiration or lapse, which said proportion or sum shall be then ascertained and determined by the actuary of the association, and the amount so ascertained and determined shall be available to the member insured under this certificate, or policy, in manner following, that is to say :

First. At the option of said member, provided he shall notify said association in writing at least one year before the expiration of said fifteen years, that he desires to have said sum paid as a tontine accumulation, then and in that event, this certificate or policy shall thereupon on the completion of said term of fifteen years, be payable annually as a cash tontine accumulation, so ascertained and determined as aforesaid, and shall be paid in cash to said member upon the surrender hereof to said association.

Second. If said member shall not exercise said option, and said surplus accumulation shall not be applied as aforesaid, then the same, after the expiration of said period of fifteen years, shall be available as cash toward payment of future dues and mortuary premiums under this certificate, or policy."

The last above quotation is printed in heavy type upon the inside of the first page of each policy, as aforesaid.

In the by-laws of appellee, under Article XI, appear certain sections providing for the handling of the reserve fund above mentioned, which said sections are stated in substance on the inside of the first page of each policy.

In section 4 of said Article XI there is also a provision made that on the expiration of each period of five years

during the continuation of the certificate of membership, a bond shall be issued for an equitable proportion of the reserve fund, and the principal of said bond shall be available ten years after its date toward paying further dues and assessments under said certificate, and should membership cease under said certificate from any cause, said bond shall at once become null and void, and any portion of said principal not thus used shall be applied to increase the bonds issued on the next quinquennial apportionment to other members of the association holding certificates issued during the same year as the aforesaid certificate.

The assured paid in total dues on these policies $825, and in total assessments $3,117.50, making a total amount paid thereon, of $3.942.50, which, with the $100 membership fee paid by the assured, makes the total amount received by the company, and paid by the plaintiff, $4,042.50, which is the amount, exclusive of interest, sued for.

There was also received in evidence the following provisions of the statutes of New York, to wit:

" Sec. 201.    What Corporations to be Subject to This Article.—Any corporation, association or society which issues any certificate, policy or other evidence of interest to, or makes any promise or agreement with its members, whereby, upon the decease of a member, any money or other benefit, charity, relief or aid is to be paid. provided or rendered by such corporation, association or society to his legal representatives, or to the beneficiary designated by him, which money, benefit, charity, relief or aid is derived from voluntary donations or from admission fees, dues or assessments, or any of them, collected or to be collected from the members thereof, or members of a class therein, or interest, or accretions thereon, or accumulations thereof, or rebates from amounts payable to beneficiaries or heirs, and wherein the money or other benefit, charity, relief or aid so realized is applied to or accumulated for the uses and purposes herein specified, or of such corporation, association or society, and the expenses of the management and prosecution of its business, shall be deemed to be engaged in the business of life insurance upon the co-operative or assessment plan, and shall be subject to the provisions of this article.

Any such corporation, association or society, which

issues any certificate, policy or other evidence of interest to, or makes any promise or agreement with, its members, whereby, upon the sickness or other physical disability of a member, and not by reason of having attained a certain age, any money or other benefit, charity, relief or aid is to be paid, provided or rendered by such corporation, association or society to such member or beneficiary designated by him, which money, benefit, charity, relief or aid is derived from voluntary donations or assessments, or admission fees, dues or assessments, or any of them, collected or to be collected from the members thereof, or members of a class therein, and interest and accretions thereon, and wherein the money or other benefit, charity, relief or aid is applied to or accumulated for the uses and purposes herein specified, or of such corporation, association or society, and the expenses of the management and prosecution of its business, shall be deemed to be engaged in the business of casualty insurance upon the co-operative or assessment plan and shall be subject to the provisions of this article."

" Sec. 205.    Reserve or Emergency Fund.—Every such corporation, association or society, except casualty associations or societies, shall accumulate and maintain a reserve or emergency fund of an amount not less than the proceeds of one death or disability assessment, or periodical call on all policy or certificate holders thereof, and at least equal to the amount of its maximum certificate or policy. Such fund, if not already accumulated, shall be accumulated by every existing corporation, association or society formed for like purposes, within six months from the time this article takes effect, and by every corporation, association or society hereafter formed under this article, within six months from the date of its incorporation; and shall be held for the benefit or protection of its members, their legal representatives or beneficiaries.    In case such fund or any portion thereof shall have been used by the corporation for the purpose or purposes for which the same was created or accumulated, and the amount thereof thereby reduced to less than the proceeds of one death or disability assessment or periodical call, the amount of such reduction below the proceeds of one death or disability assessment or periodical call shall be made up and restored to said fund within three months thereafter.    If such fund is in excess of double the proceeds of the last death or disability assessment or periodical call upon the entire membership, the

excess of any portion thereof may be used in reduction of assessments or premium calls upon policy or certificate holders; and if in excess of double such proceeds, and not less than the sum of one hundred thousand dollars, the *pro rata* excess on any policy or certificate terminated by death or surrender may be refunded to the holder or beneficiary; provided that nothing contained in this article shall be construed to permit any contract promising any fixed cash payment to any living certificate or policy holder. Every such casualty association or society shall accumulate within six months from the time this article takes effect, and maintain, a reserve or emergency fund of at least eight thousand dollars, if the maximum policy issued by such association or society be for five thousand dollars or more, or a reserve or emergency fund of two dollars for each five thousand dollars of insurance in force, if the maximum policy issued by such association or society be for less than five thousand dollars, and thereafter five per cent of the amount realized on each periodical call shall be set apart and added thereunto, unless the same be already accumulated, until such fund shall he equal to two dollars on each five thousand dollars of insurance in force. In case such reserve or emergency fund or any portion thereof shall have been used by any such corporation or society for the purpose for which the same was created or maintained, the amount so used shall be made up and restored to said fund within six months thereafter. Such fund may be held in cash, or invested in the same class of securities required for the investment of funds by domestic life insurance corporations."

EDWARD J. JUDD and ALBERT E. WILSON, attorneys for appellant.

CHESTER E. CLEVELAND, attorney for appellee; GEORGE BURNHAM, JR., and SEWELL T. TYNG, of counsel.

MR. JUSTICE WINDES delivered the opinion of the court.

For appellant it is claimed that under the insurance statute of this State (Hurd, 1889, p. 820, Sec. 8), these policies are wager or gaming contracts, and as such are illegal and void. And if illegal, then he is entitled to recover the money by him paid thereon as for money had and received. We are of opinion that this claim is not tenable.

Conceding the appellant's claim that the policies are void for the reason that they are expressly prohibited by the statute of this State, the illegality appears upon the face of the policies, and was known to appellant as well as appellee. He is bound to know the law. Watertown F. I. Co. v. Rust, 40 Ill. App. 119, and cases cited; affirmed 141 Ill. 85; Jubell v. Church, 2 Johns. Cas. 333, and cases cited; 2 Joyce on Ins., Sec 1405.

In the Jubel case, *supra*, in which was considered the right of an insured to recover a premium paid upon a policy of marine insurance, Chancellor Kent held the policy to be. invalid, and, among other things, said:

" If it be unlawful and consequently void on the ground of its being a wager policy, the assured is not at any rate entitled to a return of the premium, for *in pari delicto potoir est conditio possidentis*. It was so decided in the cases of Lowry v. Bourdieu (Doug. 468), and Andre v. Fletcher (3 Term Rep. 266)."

The cases cited sustain the opinion of the chancellor. In the Lowry case, Lord Mansfield, in speaking of a gaming policy, held that the nature of the insurance being known to both parties, they were *in pari delicto*, and there could be no recovery of the premium by the insured, because they " must draw their remedy from pure fountains."

In the Rust case, *supra*, in which Mr. Justice Pleasants delivered a carefully considered opinion, while he distinguished that case from the general rule because the illegality of the contract depended upon facts outside the policy and unknown to the assured, recognizes the general rule above stated by Chancellor Kent, which he states is supported by, among other cases, Lewis v. Headley, 36 Ill. 433, and Penn v. Bowman, 102 Ill. 523. The Supreme Court, in affirming the Appellate Court, says, in substance, that the opinion of the latter court discusses the question presented very thoroughly and exhaustively, and that the Supreme Court was content to rest its judgment upon the argument of the Appellate Court opinion, which appears to be based upon the fact that the assured had no notice of the facts which made the contract of insurance illegal. There are cases

which hold differently, but this rule seems to be sustained by the weight of authority, and seems reasonable.

This rule is analogous to the well settled principle in this State in usury cases, which, in effect, hold that although the contract is usurious, there can be no recovery for money so paid. It is not the basis of attack, but only of defense. Hadden v. Innes, 24 Ill. 381; Carter v. Moses, 39 Ill. 539, and Riddle v. Rosenfield, 103 Ill. 600.

We are, however, of opinion that the policies here in question are not illegal. The section of the statute above referred to and invoked by the appellant, is as follows:

" Sec. 8.    All corporations, associations or societies transacting business under the provisions of this act, may provide, by by-laws, for the accumulation of a surplus, general or guaranty fund, which may be invested only in the corporate name of the association or society in the United States, state, county, city, or other first-class convertible bonds or stocks, upon which interest has not been in default. Such funds, when so set apart, and so invested, shall, with the increase thereof, belong to such corporation, association or society, and not to the directors, trustees, managers or officers thereof, and shall be used only for mortuary benefits, without assessment, or applied in payment of future assessments, or otherwise used for the promotion of the object or objects for which said funds are specially provided and set apart, and such use shall not be deemed or construed to mean a profit received by members within the meaning of the statutes of this State: Provided, that nothing in this act shall be deemed or construed to authorize the payment of such funds to members as endowments, or as tontine profits, or as payments to members otherwise than for mortuary benefits, or accidents, or permanent disability benefits, except upon the dissolution of the corporation."

Appellant's contention is that the following provision in the policy is clearly within the inhibition of the statute, viz.:

" First.    At the option of said member, provided he shall notify said association in writing at least one year before the expiration of said fifteen years, that he desires to have said sum paid as a tontine accumulation, then, and in that event, this certificate or policy shall thereupon, on the completion of said term of fifteen years, be payable only as a

cash tontine accumulation, so ascertained and determined as aforesaid, and shall be paid in cash to said member upon the surrender hereof to said association."

The statute, by its terms, is permissive, and, as we construe it, has no application to foreign corporations doing business in this State. Its language is, " All corporations, associations, or societies transacting business under the provisions of this act, may provide, by by-laws, for the accumulation of a surplus, general or guaranty fund," etc. The appellee corporation does not appear from this record to be doing business in this State under the provisions of the act quoted, but is doing business here by comity and under a general statute of this State which does not require it to conform to the special provisions of the section of the statute quoted. The case of Chicago, etc., Ass'n v. Hunt, 127 Ill. 257, relied on by appellant, is that of a domestic corporation doing business under the act in question, and is not applicable to this case.

It appears from the facts set out in the statement, that the appellee corporation is fully authorized by the laws of New York to make such contracts as the policies here in question, and in the absence of any prohibition by the laws of this State, a contract which the appellee was authorized to make under the laws of the State in which it was incorporated is valid here. Relfe v. Rundle, 103 U. S. 222–5; Cravens v. Ins. Co., 148 Mo. 583–607; Ins. Co. v. Cravens, 178 U. S. 389–97; Bachmann v. Knights of Honor, 44 Ill. App. 188–90.

In the Relfe case, *supra*, the Supreme Court of the United States say :

" No state need allow the corporations of other states to do business within its jurisdiction unless it chooses, with, perhaps the exception of commercial corporations; but if it does, without limitation, express or implied, the corporation comes in as it has been created. Every corporation necessarily carries its charter wherever it goes, for that is the law of its existence."

In the Cravens case, *supra*, the Supreme Court of Missouri say :

" The rule to be deduced from the authorities seems to be, that when no statute intervenes prohibiting it, a corporation doing business by permission in another state from that of its incorporation may by contract make the law of the state of its incorporation the applicatory law of the contract, but that where the laws of the state in which it does business by license prohibit such corporations from making certain kinds of contracts, they can only act in accordance therewith."

In the Bachmann case, *supra*, this court held that a foreign corporation (in the case under consideration a benefit society, doing business in Illinois), may do business pursuant to the terms of its foreign charter, so far as consistent with and not forbidden by the laws of Illinois, and quote the following from Morawetz on Private Corporations, Sec. 993:

" A statutory license authorizing a foreign corporation to do business within the state does not alter the company's constitution, but merely gives the company a legal right to act pursuant to its constitution outside of the state by which it was chartered."

If, however, the tontine provision of these policies is void because it contravenes the section of the statute here under consideration, that does not invalidate the policies as a whole. Eliminating this provision, the policies still constituted a valid insurance upon the life of appellant which bound the appellee. The consideration for appellant's dues and assessments paid, was the insurance which he received upon his life. While the policies were in force the appellee was bound by its contracts, and appellant could not, for that reason, recover under the common counts. Watertown, etc., Co. v. Rust, 141 Ill. 85–8; Phenix, etc., Ins. Co. v. Baker, 85 Ill. 410–15; Brooklyn, etc., Co. v. Weck, 9 Ill. App. 358–60; Leonard v. Washburn, 100 Mass. 251–4; Ganser v. Firemen's F. Ins. Co., 34 Minn. 372; Swan v. Watertown F. Ins Co., 96 Pa. St. 37–42; Watertown F. Ins. Co. v. Simons, Id. 520–6; 1st Joyce on Ins., Sec. 331, and cases cited.

Other contentions made by appellant have been considered, but we think none of them are tenable. It seems unnecessary to consider the arguments of appellee's counsel,

which present other reasons for the affirmance of the judgment, inasmuch as we think the views expressed are controlling.

The judgment is affirmed.