BENJAMIN F. FRIDLEY

*v.*

EDWIN A. BOWEN.

87  151
164  445
63a 607

1. NATIONAL BANKS—*loans on real estate security prohibited.* The banking law of the United States prohibits national banks from loaning money on real estate security. They are limited to loans on personal security. Therefore, a mortgage given to an officer of such a bank, at the time of a loan by the bank, to secure its payment, being, in effect, the same as if made to the bank, is void, and will not be enforced by the courts.

2. SAME—*must act in the manner prescribed.* A bank can only exercise its franchises and powers in the manner prescribed by the law under which it is organized. The rule is the same with all bodies having only a statutory existence.

3. CORPORATION—*prohibition by implication.* Where one mode of exercising an express power, by a banking corporation, is prescribed in the law creating such corporation, by implication this will seem to forbid the exercise of such power in any other way.

WRIT OF ERROR to the Superior Court of Cook county; the Hon. SAMUEL M. MOORE, Judge, presiding.

This bill was to foreclose a mortgage made by Edmund D. Taylor and wife, to secure a promissory note for the sum of $10,000, bearing date March 25, 1875, payable to Edwin A. Bowen at the National Bank of Mendota, one year after date, with interest at ten per cent per annum. Among others, Benjamin F. Fridley was made defendant, and summons was served upon him in time for the January term, 1877, of the Superior Court, to which it was made returnable. There being no appearance, upon the calling of the cause, for him or any other defendant, all of whom had been either served with process or had entered their appearance more than ten days before the first day of that term of court, under a standing rule of court all the defendants were defaulted, and the bill taken as confessed as to them. At the same term of court Fridley appeared and entered his motion, supported by affidavits, to set aside the default as to him, and, at the same time, presented his answer to the merits of the bill and asked leave to file it. Counter affidavits were filed, and, on consideration, the court found defendant Fridley had acted in good faith, and had shown sufficient cause for setting aside the default as to him, but held the answer offered did not present any defense to the bill, and overruled the motion, to which ruling of the court the defendant saved an exception, and brings the case to this court on error.

Mr. B. F. FRIDLEY, and Mr. R. G. MONTONY, for the plaintiff in error.

Mr. FRANK J. CRAWFORD, and Mr. LUCIEN B. CROOKER, for the defendant in error.

Mr. JUSTICE SCOTT delivered the opinion of the Court:

Having examined the affidavits presented in support of the motion to set aside the default, we agree with the court below

that defendant complaining acted in good faith, and showed sufficient cause for setting aside the default previously entered against him. Whether there was any definite agreement concluded between counsel, defendant understood, and had just reason for his belief, that complainant's counsel, on account of courtesies shown him by some of defendants, had stipulated that no steps would be taken in the case until after the 15th day of January, but in violation of that understanding a default was taken on the third day of the term, under the standing rule of court. The motion was made at the same term of court, and as no unreasonable delay would have ensued from setting aside the default, the court properly ruled sufficient cause was shown for setting it aside as to defendant Fridley.

On the other point decided we can not concur in the views expressed by the court. Our opinion is, the answer, if true, presents a complete defense to the bill. The matters set forth in the answer are supported by affidavits, and as there are no counter affidavits tending to disprove the allegations of the answer, we must, for the purposes of this motion, assume the facts stated are true. It appears defendant had been the owner of the mortgaged property, and had sold it to Edmund D. Taylor for stock in the "Coal and Iron Company" of La Salle, and had made him an absolute deed for the same, which was recorded in the county of Cook, where the property is situated. Afterwards, defendant, claiming to have been defrauded and overreached in the transaction by false representations as to the value of the stock he was to receive, induced Taylor to rescind the contract, and to reconvey the property to him. But in the meantime, Taylor had borrowed of the National Bank of Mendota the sum of $10,000, for which he had given his promissory note to Edwin A. Bowen, the president of the bank, and secured it by a mortgage on the property in controversy. These facts distinctly appear by averments in the answer, and the point is made, that taking the mortgage to the president for money borrowed of the bank is, in fact, making the mortgage to the bank itself, and being a mere device to

evade the law, it is void, under the banking act, which, it is said, forbids national banks from making loans upon any other than personal security. The proposition, that borrowing money of a national bank, and giving the mortgage security to one of its officers, is giving it to the bank itself, is so self-evident, it needs no argument in its support. Otherwise, if such devices to evade the law could be tolerated, the inhibitions found in the banking law on the operations of banks, in that particular, would be rendered nugatory.

Regarding the mortgage in this case as having been made to the bank, our inquiry will be, whether a national bank, under the general law under which it is organized, is forbidden to take mortgage security upon real estate for loans concurrently made by it in the course of business. It is a well recognized principle that a bank can only exercise its franchises and powers in the manner prescribed by the law under which it is organized. It is so with all bodies having only a statutory existence. *Metropolitan Bank* v. *Godfrey*, 23 Ill. 579. The general banking law, Rev. Stat. 7th div. of sec. 5136, confers powers upon banking associations to loan money on "personal security." Where one mode of exercising an express power by a banking corporation is prescribed in the fundamental law creating such corporation, by implication it would seem to forbid the exercise of such power in any other way. Limiting such corporations to the exercise of such powers as are expressly conferred, or to such as are necessarily implied in the general powers granted, as the rule is, that is the only construction this statute will bear. It is equivalent to an express provision, such corporations may loan money on "personal security," but not upon real estate security.

If there could be any doubt as to this construction, we think it is settled by the context. In the next section of the banking law after the one cited, it is declared for what purposes national banking associations may purchase, hold and convey real estate, and "for no others." On reference to that section it will be seen no power is given to banking associations to secure

any loans by real estate mortgages. A banking corporation, under the general banking act, may hold such lands as may be necessary to accommodate its business, or as shall be mortgaged in good faith to secure debts previously contracted, or such as shall be conveyed to it in satisfaction of debts previously contracted in the course of dealings, or such as may be purchased under judgments, decrees or mortgages held by the association, or such as it shall purchase to secure debts due it, but in no event shall the title to such lands as shall be purchased to secure debts due the association, be held for a "longer period than five years." No construction, it seems to us, can make these provisions of the banking law plainer than they are. The provision declaring upon what security such associations may make current loans, viz: upon "personal security," and the subsequent inhibition that no mortgage shall be taken on real estate except by way of security for debts previously contracted, must be understood to forbid absolutely such associations making loans upon security afforded by mortgages on real estate. With the policy of the law on this subject we have nothing to do. Considerations of public policy might be readily suggested in its support, but the propriety or necessity of such a law need not be discussed. It is sufficient the act of Congress has forbidden national banking associations to make loans on real estate mortgages. Mortgages upon real estate taken by such associations to secure current loans are, therefore, without authority of law, and hence are void, and the courts will not lend their assistance to such associations to make such securities available. The mortgagor, in such cases, may defend against the mortgage, but as the transaction is illegal, the law will assist neither party, but leave them where it finds them. The rule on this subject is, where it appears a party has broken the law, courts will not assist him, although there may be justice in the claim he seeks to enforce. The views here expressed find sanction in the following cases: *Fowler* v. *Scully,* 72 Penn. 456; *First Na-*

*tional Bank* v. *National Bank,* 2 Otto, 122; *Mathews* v. *Skinner,* 62 Mo. 329.

The decree will be reversed and the cause remanded.

*Decree reversed.*