JOHN WARNER ET AL.

v.

DE WITT COUNTY NATIONAL BANK ET AL.

1. NATIONAL BANKS — MAY TAKE REAL ESTATE SECURITY. — Banks incorporated under the laws of the United States, as National Banks, may take real estate security for money loaned, and such securities are not void but voidable, and the sovereign alone can object.

2. FORECLOSURE IN CHANCERY—MUST PROVIDE FOR REDEMPTION.— Where a deed of trust is foreclosed by proceedings in chancery, it must take the usual course of such proceedings, and it is error to decree a sale by the Master without redemption.

3. LIEN UPON TWO FUNDS—MUST FIRST EXHAUST ONE.—Where one has a lien upon two funds, and another has a lien upon only one of them, equity will compel the first to exhaust the fund upon which he alone has a lien, before resorting to the other. If, therefore, a second incumbrance should be created upon a part of the premises held by him in mortgage, he must first exhaust that upon which he alone has a lien..

4. PARTIES IN FORECLOSURE.—Where the holders of a second mortgage brought their bill to foreclose, and did not seek any relief against the first mortgagees, the holders of these securities are not necessary parties to the bill; but where a proceeding to enjoin the trustee under the first mortgage from selling certain of the property under the power of sale in the first mortgage deed, is commenced, and this case is consolidated with the foreclosure proceeding, and the court undertakes to cover all the equities of all the parties, the holders of the first mortgage bonds should be made parties.

5. MORTGAGEE BOUND TO TAKE NOTICE OF CERTAIN EQUITIES.—Every-one taking a mortgage upon real estate is bound to know that by law there remains an estate in the mortgagor subject to sale or transfer, and that the burden of the mortgage will be thrown upon that portion which is retained after such sale, and he is also bound to know that if he releases the part not sold, he thereby, as between himself and the purchaser, releases a portion of the debt equal to the value of the property so released.

6. AMOUNT DUE MUST BE STATED. — The court erred in not finding the amount due under the first mortgage, and in allowing the master to determine such amount after sale. If real estate is to be sold under a decree for payment of a debt, the amount of such indebtedness should be fixed by the decree, so that subsequent purchasers or mortgagees can redeem before sale. The court has no power to delegate any of its judicial functions to the master.

7. DESCRIPTION IN DECREE.—An erroneous description of land in a decree, cannot be corrected in this court without reversing the decree in whole or in part.

APPEAL from the Circuit Court of De Witt county; the Hon.

CYRUS EPLER, Judge, presiding.    Opinion filed October 2, 1879.

Messrs. MOORE & WARNER, for appellants; that a national bank has no power to loan money and take real estate security; cited U. S. Rev. Stat. 1874, 999; Fridley v. Bowen, 87 Ill. 151; Fowler v. Seilly, 72 Penn. 456; Mathews v. Skinner, 62 Mo. 329.

The holders of the bonds secured by the first mortgage should be made parties: Puterbaugh's Ch. 62; Hopkins v. Roseclare Lead Co., 72 Ill. 373; Skiles v. Switzer, 11 Ill. 533; Story's Eq. 237.

The rule compelling a creditor having a lien on two funds, where another has a lien upon one only, to first exhaust that upon which he alone has a lien, does not apply in this case: Ladd v. Griswold, 4 Gilm. 25; Wise v. Shepherd, 13 Ill. 41; Morrison v. Kirtz, 15 Ill. 193.

Courts will not compel the exercise of this rule if it will injure the rights of others: Brown v. Cozard, 68 Ill. 178; Blazey v. Delius, 74 Ill. 299; Sweet v. Redheed, 76 Ill. 374; Hawke v. Snydaker, 86 Ill. 197; 1 Story's Eq. § 633.

It was error to order a sale on foreclosure without equity of redemption: Rev. Stat. 1874, 623; D'Wolf v. Haydn, 24 Ill. 529; Stephen v. Bicknell, 27 Ill. 444; Warner v. Helm, 1 Gilm. 220; Johnson v. Donnell, 15 Ill. 97; Weiner v. Heintz, 17 Ill. 259; Horner v. Zimmerman, 45 Ill. 14; Farrell v. Parlier, 50 Ill. 274.

Marshaling assets is never allowed when it will injure other creditors: Butler v. Elliott, 15 Conn. 187; Brink v. Branch, 16 Conn. 260.

Messrs. DONAGHUE & LEMON, for appellees; that the owners of the bonds secured by the first mortgage were not necessary parties, the proceeding not affecting their interests, cited Ryan v. Lynch, 68 Ill. 160.

When a creditor has a lien upon two funds, and another upon one of them only, the first should exhaust that fund upon which he alone holds a lien before resorting to the other, 1 Hilliard on Mortgages, 340; Story's Eq. 666; Doyle v.

Murphy, 22 Ill. 502; United States v. Duncan, 12 Ill. 523; Rogers v. Meyers, 68 Ill. 92.

It was competent for the court under the general prayer for relief to grant relief consistent with all the facts: Puterbaugh's Ch. 56; Bennett v. Matson, 41 Ill. 332.

As to the right to decree a strict foreclosure: Johnson v. Donnell, 15 Ill. 97.

Attorney's fees may be allowed, provision therefor being contained in the deed: Blazey v. Delius, 74 Ill. 299.

McCulloch, J.   On the first day of October, A. D. 1873, one Fenton H. Bogar borrowed of Gilbert & Gay $2,000, on five years' time, with interest at ten per cent. per annum, payable semi-annually, and to secure the payment thereof executed to Hudson Burr a deed of trust on lot four, and a part of lot five, in block nine, in the town of Clinton, containing a power of sale in case of default in payment.

On the 22nd day of February, A. D. 1876, said Bogar made his note to the DeWitt County National Bank for the sum of $2,000, payable one year after date, with interest at ten per cent. per annum, payable quarterly, and to secure the payment thereof executed a deed of trust to William Clagg, on said lot four, in block nine, in the town of Clinton, and on another tract, containing two and one-half acres, not contained in the deed of trust to Burr.   Subsequently to the execution of these two deeds of trust, the equity of redemption of Bogar was sold on a judgment rendered against him in the United States Court at the June term, 1876, for the sum of $770.24, and was purchased by John Warner and Henry Magill, partners, under the firm name of Warner & Co., who subsequently received a marshal's deed for all the lands embraced in both deeds of trust. They also procured the assignment of a judgment in Circuit Court of DeWitt county, in favor of one Carroll and against Bogar, for the sum of $635.66, rendered December 1st, 1876, which is still unpaid.   They have likewise obtained from Bogar a quit-claim deed for said premises.   These several transactions seem to have been intended to provide Warner & Co. security for the re-payment of the above mentioned items of

indebtedness and some others, amounting in all, as is claimed, to between four and five thousand dollars. On the 16th day of August, 1878, the said Clagg and the DeWitt County National Bank filed their bill in the DeWitt County Circuit Court, to foreclose the said trust deed executed by Bogar to Clagg, to which bill said Warner, Magill, Bogar and Bogar's wife (who had signed all the said deeds), together with Kent and Kirker, two judgment creditors, were made defendants. On the 4th day of September, 1878, all of said defendants appeared and demurred to the bill, and without further action the said cause was, on the 13th day of the same month, continued until the next term.

In the meantime the debt' secured by the deed of trust to Burr having matured, and default having been made in the payment thereof, said Burr advertised the premises deeded to him to be sold by virtue of said deed of trust, on the 18th day of November, 1878.

On the 16th of November, 1878, the said bank filed its second bill in said court, wherein Burr, Warner & Magill are made defendants, setting out the priorities of the respective parties; that Bogar was insolvent; that the premises described in the deed of trust to Clagg were meager security for the debt; that part of said lot five embraced in the deed of trust to Burr was ample security for the Gilbert and Gay debt, and praying that Burr be enjoined from selling said lot four until he had exhausted said security on said lot five, upon which the bank had no lien; and that in case of a sale of lot four, he be required to pay to the bank the overplus, after satisfying the Gilbert and Gay debt.

It is claimed on the part of the bank that, on the day of the intended sale, its president went to Burr and offered to bid on that part of lot five described in his deed of trust, the whole amount of the Gilbert & Gay claim, but that Burr refused to entertain the proposal, whereupon application was made to the master in chancery, who ordered an injunction to issue, according to the prayer of the bill, which was served on Burr on the day of the intended sale, and no further proceedings were had under said notice. On the 14th of March, 1879,

Warner, Magill and Bogar answered the bill first filed, wherein they set up as a defense, that the bank was a corporation organized under the laws of the United States; that the note of Bogar to the bank was for a loan of money, and that because the bank was prohibited by law from loaning money on real estate security, therefore the deed of trust to Clagg was void. Warner and Magill also claim, that although the securities held by them became liens subsequent to the execution of the deed of trust from Bogar to Clagg, yet the several debts secured thereby were contracted before the execution of his deed of trust, and therefore said deed of trust being void for the reason aforesaid, they are not affected thereby.

Before the filing of these answers, however, it appears that Clagg, on account of long-continued absence from this State, and his consequent inability to longer act as trustee, resigned, and, pursuant to the terms of the deed, one Joseph J. Kelly became his successor in the trust, who proceeded to advertise the premises described in the Clagg deed, to be sold on the 15th day of February, 1879.

Thereupon Warner & Magill filed their cross-bill in the first suit, and made Kelly a party thereto, setting up their claims in the same manner they had done in their answer, and praying that the deed to Clagg be set aside and canceled. Burr answered the bill filed against him, alleging that the deed to Clagg was void, and that the several parties heretofore named are interested in the property. He denies the right of the bank to have that part of said lot five, described in his deed of trust, first sold: first, because it is not the law; secondly, because such an order would work great hardship upon the other lien creditors; thirdly, because the bank has other property not included in the Clagg deed; fourthly, because the Clagg deed is void. He further says that had he not been enjoined, he should have offered said lots four and five together, as there is a valuable brick house situated on both of them; or should have sold the same in such manner as to have made the most money.

Warner & Magill also answered this bill, setting up substantially the same defense they had done in the first case. Both cases were referred to the master to take the proofs.   In

the first case, he reported the sum of $2,321.88, due from Bogar to the bank. In the second case, he simply reported the evidence without any special finding.

The court in its decree found that all the defendants named in the first bill had been duly served with process, and caused a default to be entered against Martha J. Bogar, William Kirker and Emmett Kent, for want of an answer to the original bill, but it seems the last two of them had answered the cross-bill. Answers having been filed by all other defendants to the several bills wherein they were made parties defendant, and the reports of the master having been filed in both causes, the court found that the nature of the matters in said two causes was such that the same should be consolidated and treated as one cause, and it was accordingly so decreed. The court thereupon found that Bogar and wife had executed the two deeds of trust as aforesaid, and that there was due from Bogar to the bank, the sum of $2,321.88, and that the interests of Warner, Magill, Kent and Kirker were subsequent and subject to said deeds of trust. The court further found that Burr had advertised the premises described in his deed of trust, and specified the sum due on the 25th day of October, 1878, at $2,128; that under the two trust deeds, the trustees were each authorized and empowered in default of payment of their respective debts, to enter upon, possess, hold and enjoy the said premises, and either with or without such entry, after having advertised the same as therein specified, to sell the same or any part thereof, and all right and equity of redemption of the grantors, their heirs or assigns, to make deeds to the purchasers in fee, and to make distribution of the proceeds of such sales in manner provided in said deeds.

It was therefore decreed that the injunction against Burr be made perpetual ; that Bogar within twenty days pay to the Bank the sum of $2,321 88-100, with interest, and the costs, and in default thereof the master proceed to sell all the said property, in the following order : First, the two and one-half acre piece, described only in the Clagg deed ; secondly, the part of lot five, block nine, described only in the Burr deed; thirdly, lot four, in block nine, described in both deeds. That the sale

be made for cash, on thirty days' notice ; that out of the pro-
ceeds of the sale of the first-named tract the costs of the fore-
closure suit be paid, and the overplus to the bank ; that out
of the proceeds of the sale of the part of lot five, he pay to Burr
the amount of the debt secured by his deed, and the surplus,
after paying the costs of the injunction suit, and the accruing
costs of the sale, he bring into court, to abide its further or-
der; that out of the proceeds of the sale of said lot four, he
pay any unpaid balance of the debt secured by the Burr deed,
and any costs remaining unpaid, and the balance, so far as
necessary, to the bank on its debt, and bring the overplus into
court, to abide its further order.   It was further ordered, that
upon such sales being made, the master tender the amount due
upon the debt so due to said Burr, including the attorney's
fee (one hundred dollars) specified in his deed, and his expenses
and costs of advertising said premises for sale under said deed,
and upon such tender being made, the said Burr should render
to the master, under oath, a statement in writing of the amount
of his debt, costs and expenses, up to the date of the sale ad-
vertised to be made by him as such trustee, and interest ac-
crued on his debt since that date ; that he deliver to the mas-
ter the deed of trust and bonds therein described, and all
unpaid coupons ; and that if he fail to deliver said bonds, deed
of trust, and statement, the master then tender him $2,128, with
interest at the rate of ten per cent. on the amount of the said debt,
and the said attorney's fees, and costs of advertising, and de-
mand from him the cancellation of said evidences of indebted-
ness.   The decree then provides the manner in which the mas-
ter shall proceed to effect a cancellation of the same, in case of
Burr's refusal to deliver them up ; that the master shall make
report of his doings to the next term of court, and upon ap-
proval thereof, shall execute a deed or deeds to the purchaser,
to have like force and effect as if the same had been made by
the trustees in the execution of the powers contained in their
respective deeds ; that thereupon the equity of redemption be
effectually and forever foreclosed, and the purchaser let into
possession of the premises so sold.

The objection taken to this decree, on the ground that the

deed of trust to Clagg is void, as being in excess of the power of a banking corporation organized under the laws of the United States, cannot be maintained.   It is true our Supreme Court, in Fridley v. Bowen, 87 Ill. 151, has decided such securities void, and refuses relief thereon when sought in equity; yet since that decision was made, the Supreme Court of the United States, in Union National Bank v. Matthews (not yet reported), reversing Matthews v. Skinner, 62 Mo. 329, cited by appellant's counsel, has decided that such securities are not void, but only voidable, and the sovereign alone can object. The same principle had been adopted by our own Supreme Court in regard to domestic corporations before the decision in Fridley v. Bowen, *supra*, and the same doctrine adopted, at least to the extent that, if a corporation has power to take a grant of land at all, then a grant in excess of such power is not void, but only voidable by the sovereign, in a proceeding instituted for that purpose.   Hough v. Cook County Land Co. 73 Ill. 23.

If the security is not void, but only voidable, in manner above indicated, we see no reason why a banking corporation organized under the laws of Congress, should be denied the proper relief in the State courts.   But be this as it may, the proof in this case is that the deed of trust and the note secured thereby, which bears the same date, were given to secure an antecedent debt then past due, and for which the bank had no security.   This being so, the case comes within one of the saving clauses of the act of Congress, and for that reason the security is valid.   Rev. Stat. U. S. § 1999.

Another objection urged against this decree is, that it authorized the master to sell without redemption, and make deeds to the purchasers upon confirmation of the sale by the court.   In this the court erred.   We make no question that in a proper case made, the court of chancery has power to appoint a trustee, and to authorize him to execute the trust by making sale according to the powers contained in the deed, and that such sale might be considered as made under the deed rather than under the decree.   Rice v. Brown, 77 Ill. 549.   But such is not this case.   The trustee, as well as the *cestui que trust* come into court and ask for a foreclosure according to the usual practice

of the court. Having done so and brought appellants into court, they cannot now resort to the powers contained in the deed, but will be considered as having abandoned them. Hurd v. Case, 32 Ill. 45.

So far as the relief prayed for in the first bill goes, it is a simple case of foreclosure, and any sale to be made by the master in pursuance of the decree should have been ordered to be made in the usual and statutory manner, without attempting to cut off the right of redemption. DeWolf v. Hayden, 24 Ill. 528.

It is again objected, that the holders of the Gilbert and Gay notes or bonds should have been made parties.

It will be observed, that the first bill did not seek a foreclosure of both deeds of trust, nor did it set up any right to have lot five sold first. So the complainants in that bill were seeking no relief against the holders of those securities, and therefore they were not necessary parties to that bill. The second bill simply sought to enjoin Burr from selling lot four, until after he had sold lot five, and from disposing of any surplus after satisfying Gilbert and Gay's claim. The preliminary injunction went no further than this, and had Burr then gone on and made sale of the premises in the manner pointed out in the writ of injunction, as he had a right to do, the object of that bill would have been accomplished without further proceedings. Instead of doing this he came into court with a defense, setting up the supposed illegality of the Clagg deed of trust, denying the power of the court to compel him to proceed to sell lot five first, and alleging that such a course would be prejudicial to the interests of other lien creditors. He also says that, had he not been enjoined, he should have offered lots four and five together, or should probably have sold the same in such manner as he thought best to make his money. Should the injunction be dissolved, we have good reason to believe he would pursue the same course on another occasion. Appellant's counsel very plausibly argue, that, being the holder of the first incumbrance, he has a right to pursue his own course as to the collection of his money; for he owes no duties to the purchasers of the equity of redemption that he did not

owe to the mortgagor himself, and that until he voluntarily comes into a court of equity to ask for some relief, he is not answerable to them for any infringement upon equitable rights, which by reason of their own acts may have sprung up among themselves. This position, however plausible, is not sound. For every one taking a mortgage on real estate is bound to know, that by law there still remains an estate in the mortgagor subject to sale and transfer by any legal mode of conveyance, either in its entirety or in parcels; and that when the mortgagor has conveyed a part, equity will throw the burden of the mortgage upon that portion which he retains. Consequently, if, with full knowledge of such conveyance, the mortgagee releases from his mortgage the part not sold, he thereby, as between himself and the purchaser, releases a share of the debt equal to the value of the property so released. Iglehart v. Crain et al. 42 Ill. 261; Matteson v. Thomas, 41 Ill. 112; Briscoe v. Power, 47 Ill. 447.

He also takes it subject to the further rule, that where one has a lien upon two funds, and another has a lien upon only one of them, a court of equity will compel the first to exhaust the fund upon which he alone has a lien before resorting to the other.

If, therefore, a second incumbrance should be created upon only a part of the premises held in mortgage by him, he must first exhaust that upon which he alone has a lien. These rules of equity he is bound to respect and observe; and if he fails to do so, he may, without any other grounds of equitable relief, be brought into court, and enjoined from proceeding in any other manner. Hurd v. Eaton. 28 Ill. 122. The second bill was therefore maintainable for the relief prayed for.

We do not perceive that, when standing alone, at least until a defense was interposed, it was necessary to make the holders of the notes or bonds secured by the Burr deed, parties to the bill. But when the court undertook to consolidate the two suits, and to cover all the equities existing between the parties by a single decree, an entirely different class of questions at once arose. There was no prayer in either of the bills for a sale of lot five by decree of court, nor for any sale of lot four,

unless subject to the Burr deed. When the court undertook to take away the power of sale resting in Burr as trustee for Gilbert & Gay, or their assignees, and to order a sale by the master, against the consent of their trustee, they could not be bound by such a decree. Warner & Co. being purchasers of the equity of redemption, or subsequent mortgagees, as they really appear to be, had the right, if their property was to be sold at all, to have it sold under a valid decree; for otherwise it might not realize half its value; while Gilbert & Gay had the undoubted right to have the land sold by their own trustee in the order prescribed in the writ of injunction and in the decree, unless for good cause shown (which they had the right to answer), the trustee should be superseded by the master. We hold, therefore, that it was error to decree that the master should sell lot five or lot four for the satisfaction of the Gilbert & Gay debt without making the holders thereof parties to the bill. And inasmuch as neither of the bills sets out any reason why the trustee should be displaced, and the right to sell, either under the powers contained in the deed or under the ordinary powers of the Court, in the execution of decrees of foreclosure, should be conferred upon the Master, if appellees desire to pursue that course they must amend their pleadings in that respect.

It is further objected that the court erred in not finding the amount due on the Gilbert & Gay indebtedness, and in allowing the master to determine the same after sale.

Had there been no other error in the decree, this alone would have been fatal. If the real estate was to be sold at all under a decree for the payment of the Gilbert and Gay debt, the amount therof should have been found by the court, and fixed by the decree, so that subsequent purchasers or mortgagees could redeem before sale. The court has no power to delegate any of its judicial functions to the master.

The parties to the suit had a right to have the matter inquired into, and judicially determined as to what amount was actually due Gilbert and Gay, or their assigns. The difficulty grew out of the fact that the holders of these bonds or notes, were not parties to the bill, and consequently these evidences of indebtedness were not before the court.

Of a similar character are certain directions given to the master to compel the trustee, after sale and tender of a certain sum of money, to surrender the bonds or notes and the deed of trust, and to execute a deed of release therefrom, all of which would have been unnecessary if the proper parties had been brought in. The execution of the decree would then have operated as a discharge of record, of all the incumbrances and no release would have been required.

We perceive no error in allowing the attorney's fee of $100, to be included in the decree. It is expressly provided for in the deed of trust, and we see no objection to its being allowed in the decree.

Nor do we see that the court committed any error in the order in which the property was to be sold that is in any way prejudicial to these appellants.

It is further objected, that the court erred in not finding the amount due Warner & Co. It does not clearly appear from their pleadings whether they claim as purchasers or as mortgagees of the equity of redemption. If the former, then no finding as to them was necessary, for they take the entire overplus after paying off the debts secured by the two trust deeds; if the latter, they should set up more definitely in their pleadings what they claim to be their due.

The error in the description of the two and a half acres is confessed. It is a material error, and not merely formal. It could not be corrected in this court except by reversing the decree in part, and rendering the proper decree here.

For the errors above indicated the decree will be reversed and the cause remanded, for further proceedings not inconsistent with the principles herein declared.

Reversed and remanded.