63   593
164s  427

## John McNulta v. Corn Belt Bank.

1. BANKS AND BANKING—*A Bank can not Bind Itself to Issue Stock in the Future.*—A resolution adopted by a bank organized under the statute fixing the salary of the president, and providing in consideration for his acceptance of the office "for an additional sum equal to two and one-half per cent on all stock to be issued, payable at the time fixed for such issues, that is to say, at least one hundred thousand dollars par value of the said stock is to be issued within one year after the opening of the said bank for business, and another additional one hundred thousand dollars, making three hundred thousand dollars in all that is to be issued,

including the first issue of one hundred thousand dollars, within two years from that date," establishes no binding obligation upon the bank to issue the stock.

2. SAME—*Officers no Power to Bind the Bank to Issue Stock.*—Neither the stockholders nor directors in a State bank have power in either capacity to bind the bank to issue stock or to authorize the directors in their discretion to increase the capital stock by several distinct issues.

3. SAME—*Issue of Stock, Question of Policy.*—Whether, when and in what amount the increase of the capital stock of a State bank shall be made, are questions of policy to be determined by the stockholders, and not by the directors.

4. SAME—*A Creature of the Statute.*—A State bank has only a statutory existence, and can exercise its powers and franchises only in the manner provided by the law under which it is organized; and where one mode is prescribed by the law, any attempt to exercise its powers in any other mode is impliedly forbidden.

5. SAME—*Increase of. Capital Stock.*—The statute relating to banks and banking prescribes the manner in which the capital stock of a State bank may be increased and contemplates no other manner or means of accomplishing the same; it can therefore be done only in the one way prescribed.

6. SAME—*Stock not to be Increased in Unfixed Parcels.*—The stockholders can not by one vote decide upon an increase of an aggregate amount of capital stock in unfixed parcels at unfixed times, distributed and running through a future period, without regard to the judgment or will of those who in the meantime may become stockholders.

7. SAME—*Rights of Stockholders not to be Restricted.*—A by-law of a State bank providing that all the stock sold or transferred should be with the express condition that it will be voted in favor of all propositions submitted by the board of directors to increase the capital stock, that it should become a part of every contract for the transfer of stock and operate as a reservation of a limited ownership of the stock transferred, to the extent of the provisions thereof, and made binding on the transferee by the acceptance thereof, is void.

8. SAME—*Province of the Stockholders.*—The stockholders of a State bank are the constituent members of the body; they own the capital stock and other corporate property, and dictate the policy by which its business is conducted, but they have no power, by agreement or otherwise, to change in any respect the organic law.

9. SAME—*Rights of Holders of Stock—Transfers.*—The right of a shareholder to transfer his stock without condition or limitation is one of vital importance, and all unreasonable attempts to restrain it are void as against public policy, and although an agreement between the shareholders or a part of them, not to sell except on certain conditions may be valid, if it does not amount to an unreasonable restraint of trade; but their right can not be restrained by a by-law of the corporation.

10. ULTRA VIRES—*When Not Available as a Defense.*—Where a con-

McNulta v. Corn Belt Bank.

tract made by a corporation with an individual is *ultra vires* as concerns the corporation, but has been in good faith wholly or in part executed by the individual, so far as executed the doctrine of *ultra vires* is not a defense.

**Assumpsit,** common counts. Appeal from the Circuit Court of McLean County; the Hon. CYRUS EPLER, Judge, presiding. Heard in this court at the May term, 1895. Affirmed. Opinion filed December 10, 1895.

ROWELL, NEVILLE & LINDLEY and WELTY & STERLING, attorneys for appellant.

The statute under which the defendant was incorporated gave its directors power to fix the salary of the president and to fix it at the time the resolution involved in this suit was adopted. Banking Act of 1887, Sections 1, 2, 3, 4 and 5.

Judicial decisions go to the extent of holding that a payment of a salary to a president without a resolution or by-law fixing a salary before the services are performed, or before he enters upon the duties of an office, is illegal. The converse would therefore be that a corporation by resolution or by-law may authorize compensation to its president for services and other duties required of him. Ellis v. Ward, 137 Ill. 509.

A stockholder, president, director or other officer, may enter into contracts with his corporation. Pierce on Railroads, Sec. 31; Heart et al. v. Brown et al., 77 Ill. 226; Beach et al. v. Miller, 130 Ill. 169; Morawetz on Corporations, 527; Budd v. Walla Walla P. & Co., 2 Wash. 347.

Acts done by promoters of a corporation, subsequently approved by the corporation, and the benefits thereof received, are binding. Cook on Stockholders, Sec. 207 and notes; Woods v. Whellan, 93 Ill. 153; McDonough v. Bank, 34 Texas 309; Whiting v. Wyman, 101 U. S. 392; Bommer v. The American, etc., Mfg. Co., 81 N. Y. 468; Balette v. Northwestern, etc., Co., 37 Minn. 89.

A corporation can not avail itself of the defense of *ultra vires* where the contract has been in good faith performed by the other party to it and the corporation has had the benefit of the contract and of the performance. Bradley v. Ballard, 55 Ill. 413; Darst v. Gale, 83 Ill. 136; People's

Gas Light and Coke Co. v. Chicago Gas Light & Coke Co., 20 Ill. App. 494; First National Bank v. Brooks, 22 Ill. App. 248; Benefit Association v. Blue, 120 Ill. 121.

The plea of *ultra vires* should not, as a general rule, prevail, whether interposed for or against a corporation, when it would not advance justice, but on the contrary would accomplish a legal wrong. Whitney Arms Co. v. Barlow et al., 63 N. Y. 62.

The courts will, as a general rule, presume that contracts made by a corporation which appear to be designed to promote its legitimate and profitable operation are within the limits of its powers, and if their validity be assailed the burden will be on the assailant. Ellerman v. Junction Ry. Co., 23 N. J. Ch. 287.

The fact that the president was present when salary was voted, did not affect the validity of the vote. Hax v. Davis Mill Co., 39 Mo. App. 453.

So long as honesty and good faith concur, the expediency of a contract made by the managers of a corporation in its behalf is for their determination and their decision concludes the corporation. Park v. Grant Locomotive Works, 40 N. J. Eq. 114.

A contract may be ratified by the stockholders of a corporation. Kelly v. Newburyport, etc., Co. v. Oregon Ry. and Navigation Co., 28 Fed. Reporter 505.

For duties not strictly within the ordinary functions of the office a reasonable compensation can be recovered. Edwards v. Fargo & S. Ry. Co., 33 N. W. Rep. 100.

JOHN E. POLLOCK and A. J. BARR, attorneys for appellee, contended that the board of directors had no power to contract with McNulta that $300,000 of stock should be issued. The stockholders alone had the power to say whether the capital stock of the bank should be increased. Starr & Curtis' Statute, Vol. 3, page 110, Sec. 42.

An *ultra vires* contract can not be ratified by the stockholders. Thomas v. The Railroad Co., 11 Otto 83.

A director owning a majority of the stock can not contract with himself. Miner v. Belle, 93 Mich. 97.

The directors had no power to pay appellant for his services as promoter, which they sought to do by allowing him the two and one-half per cent.   Ellis v. Ward, 137 Ill. 509; Cook on Stock and Stockholders (3d Ed.), Vol. 2, Sec. 657.

The question of *ultra vires* is properly raised upon the plea of *non est factum* and objections to the testimony.   B. S. Green Co. v. Blodgett, 49 Ill. App. 180.

The doctrine of *ultra vires* should not, as a general rule, prevail, whether interposed for or against a corporation, when it would not advance justice, but on the contrary would accomplish a legal wrong.   Kadish v. Garden Ass'n, Chicago Legal News of date April 7, 1894, Ill.; Hubbard v. New York Investment Co., 14 Fed. Rep. 676.

The contract or resolution, so-called, was not only *ultra vires*, but void.   Penn v. Borman et al., 102 Ill. 523; Davis v. Old Colony, 131 Mass. 259.

As president, appellant participated in the meeting where the resolution was adopted, and the same was invalid for that reason.   Wickersham v. Crittenden, 28 Pac. Rep. 791, and cases cited; Kelsey v. Sargent, 40 Hun 151; Bearse v. N. Y. Life Ins. Co., 66 Hun 67.

FIFER & PHILLIPS, of counsel for appellee, contended that it is not within the general power of directors to release an original subscriber to capital stock, or to make any arrangement with him by which the company, its creditors, or the State, shall lose any of the benefits of his subscription. Every such arrangement is regarded in equity, not merely as *ultra vires*, but as a fraud upon other stockholders, upon the public, and upon the creditors of the company.   Burk v. Smith, 16 Wall. 390, 395; Bedford R. R. Co. v. Bowzer, 48 Pa. St. 29; Melvin v. Lamar Ins. Co., 80 Ill. 446; Osgood v. King, 42 Iowa 478.

Whenever the board passed beyond their legitimate province of fixing the president's salary, their action could at best amount to no more than a contract made with appellant to sell stock for the bank; and a contract made with a cor-

poration in which a director of a corporation is interested, either directly or indirectly, is voidable at the instance of the company or of the stockholders. San Diego v. San Diego R. R. Co., 44 Cal. 106; Rice's Appeal, 79 Pa. St. 168; Alford v. Miller, 32 Conn. 543; Port v. Russell, 36 Ind. 60; Van Cott v. Vun Brunt, 2 Abb. N. C. 283; Pacific R. R. Co. v. Seeley, 45 Mo. 212; Cook v. Berlin Woolen Mill Co., 43 Wis. 433; U. S. Rolling Stock Co. v. Atlantic R. R. Co., 34 Ohio 450; Smith v. Skeary, 47 Conn. 47.

And this is so whether the director entered into the contract in its inception, or subsequently acquired an interest in it. Lyon v. Lawrence, etc., 21 Kas. 365; European Ry. v. Poor, 59 Me. 277.

It is evident from this whole transaction and its surroundings that the appellant sought this bonus as a compensation to himself for his services as a promoter of the corporation. Such services can not, however, be paid for out of the funds of the bank; and, if agreement has been made to pay for such services, the agreement may be repudiated at any time. N. Y. R. R. Co. v. Ketchum, 27 Conn. 170; Rockford R. R. Co. v. Sage, 65 Ill. 328.

Directors voting stock to themselves in compensation for selling corporate stock, are liable for the value of the stock. Assignee v. Stine, 15 Phil. 37.

Nor could the board of directors legally agree to pay him for services which had already been rendered without any contract for compensation.

A salary or back pay voted to a director after the services have been rendered, can not be enforced. It is invalid and void. It is the same as giving away the assets of the corporation. 2 Cook, Stock and Stockholders, p. 923, Sec. 657; Lafayette, etc., v. Cheney, 87 Ill. 446; Cheney v. L. B. & M., 68 Ill. 570; Gridley v. Same, 71 Ill. 200; Holder v. Same, 71 Ill. 106.

When salary is fixed, no extra compensation can be allowed for extra service. Carr v. Chartier's Coal Co., 25 Pa. 337.

A resolution remunerating officers who have been elected

to serve without compensation is merely voluntary and revocable. Loan Ass'n v. Stonewetz, 29 Pa. 534.

Mr. Justice Pleasants delivered the opinion of the Court.

On the 5th of October, 1891, permission was granted to appellant and others to organize a banking association under the act of June 16, 1887, amended by that of June 3, 1889, (Hurd's R. S., Chap. 16a,) by the name of Corn Belt Bank, at Bloomington, with a capital stock of $100,000, designed to be increased to $300,000, in shares of $100. Appellant subscribed for nine hundred shares and ten others for ten each. At a meeting of the subscribers on the 27th, the number of directors was fixed at eleven, and each subscriber was elected a member of the board; and at a director's meeting immediately following, appellant was elected president. After several intervening meetings not necessary to be noticed, the board, on the 25th of November, adopted the following resolution:

" Whereas, John McNulta has been elected president of the Corn Belt Bank, and preliminary to his acceptance of said office and entering upon the duties of the same, it is necessary to fix and agree upon compensation for his services as such president, therefore, be it resolved, that it is understood and agreed that the compensation of John McNulta as such president shall be one hundred dollars per year; and as a further consideration for his acceptance thereof, an additional sum equal to two and one-half (2½) per cent on all stock to be issued, payable at the time fixed for such issues, that is to say, at least one hundred thousand dollars par value of the said stock to be issued within one year after the opening of said bank for business, and another additional one hundred thousand dollars, making three hundred thousand dollars in all that is to be issued, including the first issue of one hundred thousand dollars, within two years from that date.

The said John McNulta, by his acceptance thereof, agrees to subscribe for, and take at par value all of such stock, in

lots of not more than fifty thousand dollars each, within any one period of thirty days after the preceding lot has been fully disposed of, paying therefor in cash, par value with his own funds, whenever the board of directors shall find responsible persons agreeing to purchase the same from him at such a price as may be fixed by the board, not less than 105, and interest at seven per cent from date of issue of such stock; and to sell the same to the persons and in the amounts designated by the board, with only the restrictions in the transfer in use at the time of commencement of business; for the purchase and sale of which stock said John McNulta is to also have interest at the rate of seven per cent per annum and exchange on New York on all sums so invested by him. The surplus arising from the sale of said stock by him to inure to the benefit of the bank and to be disposed of as the board of directors may see fit."

On December 2, 1891, the bank was formally opened at 10:30 o'clock A. M., after inspection by the auditor's deputy and delivering of his certificate and permit of that date, authorizing it to commence business. Half an hour later the directors held a meeting, at which, among other business done, the by-laws reported were adopted, and the salary and compensation of the president was fixed by re-adoption of the resolution above quoted—the record showing that the vote on the motion was taken by roll call, the vice-president presiding, and that all the members voted in favor thereof. Immediately upon its adjournment the same persons organized as a meeting of stockholders, and in that character by a unanimous vote, representing all the shares, approved the by-laws specifically and assumed generally to " approve and confirm all the records, proceedings and transactions of the board to date." On the same day appellant was credited on the books of the bank with $102,500, of which $100,000 was ostensibly for the price of the stock issued to him, and the $2,500—as would seem from his deposit ticket for that amount, and a charge in the expense account book of the same amount and date, for " organization"—was the percentage on the amount of stock so issued, under said resolu-

tion.    In May, 1892, the directors, against strong opposition
by some and with general reluctance, issued to him an addi-
tional amount of $50,000 in stock, on which he received
$1,250 as percentage under the same resolution.    But after-
ward refusing to issue any more, he resigned his presidency
at the close of the year's service on December 2, 1892, and on
January 25, 1894—the " two years after the opening of the
bank for business " having elapsed—brought this suit in as-
sumpsit on the common counts and two special counts upon
the resolution quoted, to recover $3,750 damages for the non-
payment of the 2½ per cent on the further amount of stock
originally intended to be, but which was not, issued.

Defendant pleaded the general issue, *non est factum*, and
set-off of $3,750, the percentage alleged to have been unlaw-
fully received by plaintiff on the amount of stock that was
issued.

A jury having been waived and the cause tried by the
court, the issues were found for the defendant on the first
and second plea, and against it on the last.    A motion for a
new trial was overruled and judgment entered for the de-
fendant for its costs; from which plaintiff took this appeal
and assigns error upon divers rulings of the court and the
entry of said judgment.    Defendant assigns a cross-error
upon the finding on the plea of set-off.

In the argument for appellant it is said that " the only
question involved in this record is, had this corporation
(the power) either by its directors in the preliminary organ-
ization, or by its directors in the completed organization, or
by its stockholders after the corporation had been duly
chartered, to pass the resolution in controversy."

It is declared upon as embodying an absolute contract
between the corporation and the appellant, its president,
by which for the consideration therein mentioned, he was
to receive besides the annual salary the further sum of
$5,000, " one-half of which should be payable in any event
within one year and the other half within two years, and
all of which might upon a contingency be payable within
the first year," which contingency was the time to be fixed

for the issues of additional stock. And the breach alleged in the special counts is not that the defendant failed to issue the stock, but that it failed to pay the money.

In support of appellant's claim three propositions are urged: First, of fact, that the provision bound appellee to pay it whether the stock should or should not be issued; second, of law, that the directors, or if not, the stockholders, had power so to bind it; and third, of equity, that if the alleged agreement was in that respect *ultra vires*, yet if it had been in good faith fully executed on the part of appellant, appellee can not set up that defense.

The first involves and depends upon the construction of the resolution. In his testimony appellant says he frequently stated to members of the board, when asked if by the resolution they were bound to issue additional stock, " that it was in the power of the board to stop the issue of stock at any time; that it required a vote of a majority of the board to increase the stock, and without that vote it couldn't be increased. Upon the question about commission, or not paying commission, I simply told them what the resolution said." This is further shown from the following extract from the argument: " The sole purpose, intent and meaning of the reference to the issue of stock * * * is to fix a time for the payment of this portion of the compensation agreed on. It made the amount named due and payable at any time upon the issuing of the stock. It made the same payable in any event at the expiration of the time named within which it was intended the stock would be issued, and contingent only upon the refusal of appellant to carry out the obligation imposed upon him. The purpose to issue $300,000 in capital stock was a purpose only, subject, of course, to a change of intention on the part of the directors and stockholders as good business judgment might require. The power to issue or increase the stock was absolutely and wholly in the control, first, of the board of directors; second, of the stockholders; and there was no binding obligation upon either to issue such additional stock; and therefore when appellant accepted the office of president, and pre-

pared himself to comply with the terms of the resolution, his compensation was not left to any future action which might result in a change of policy, but was made absolute in the beginning."

From these passages we understand the view of appellant and his counsel to be that the resolution did not bind appellee to issue any additional stock, but did bind it to leave the question to the discretion of the directors; that while it expressed a purpose to issue the additional $200,000 it was not an obligation, but only a purpose which the directors could change or refuse to execute, as good business judgment might require, without thereby violating any contract with or doing any legal wrong to appellant; but that if they should so refuse, and he. should be ready and willing to take, pay for, and sell it as therein expressed, appellee would be bound to pay him the amount of percentage stated. And the claim is that the compensation sued for, being for services not included in the usual duties of president, but yet in the interest of the corporation and legitimate in their character, and having been fixed before they were performed or undertaken, is properly recoverable in this action upon the authority of Ellis v. Ward, 137 Ill. 509; and so notwithstanding his official relation to the board of directors. Beach v. Miller, 130 Id. 169 and citations.

These passages present all that is said for the construction which excepts from the obligatory provisions of the resolution only the matter of the actual issue of additional stock, and the reason for that exception is based, not upon the language of the instrument or any want of power in the directors or stockholders so to bind the corporation, but is inferred solely from the character of the subject-matter, which involved a course of future action materially affecting its interests, and which could not be properly determined in advance, but only in view of the business conditions existing or apparently existing when such action should be proposed. This would be a good reason for doubting the intention so to bind it, unless it was otherwise satis-

factorily shown; but if they had power to do it and clearly expressed their intention thereby to do it, it was for them to take the chances of future condition if they would, and their agreement in that behalf, however injudicious, would be binding.

We find nothing in the language of the instrument which clearly compels the construction contended for. Nor do we mean to express the opinion that it clearly imports a positive agreement to issue the additional stock in consideration of his agreement to purchase and pay for and sell it as therein set forth, though we incline to think that would be the better opinion from the face of the resolution. For whatever is stated as contemplated in any sense or case to be done, is stated as being positively "understood and agreed" should be done. These terms seem to apply alike, in obligatory force, to every act that is in any way referred to, though with different qualifications as to time of performance, and therefore that the issue of the stock and the finding of responsible persons agreeing to purchase it of appellant at the premium indicated were as clearly matter of positive agreement as that he should receive two and one-half per cent on the amount thereof.

Nevertheless, for other and weightier reasons besides the one suggested, we concur in the conclusion that it established no binding obligation upon appellee to issue the stock; and hold, further, that it was not thereby bound to pay or allow to appellant a percentage on any amount that was not issued, whatever may have been the intention of the directors in adopting and re-adopting the resolution, or of the stockholders in approving and confirming it. Circumstances outside of it, which may properly be considered in arriving at its construction, strongly tend to show that excepting the provision fixing the salary it was wholly and merely conditional; that the intention was only to declare the policy and purpose then entertained, though contingent upon future and uncertain conditions, and to indicate the means by which, as then understood, it could be executed, if and when these conditions, in the judgment of those then

having the power, should warrant it. Some of these circumstances are, the time of its adoption, the relation of those who joined in it to each other and to the corporation, the essentially conditional character of the purpose, the time for its execution, the form of the instrument by which it was expressed, and the acts and declarations of those who adopted and confirmed it, showing their understanding of it and their actual knowledge of the statute requiring them to submit every proposition for an increase of the stock to the vote of those holding the outstanding shares.

It was adopted before, and re-adopted and confirmed immediately after the bank was opened for business, exclusively by the persons who constituted the board of directors. They had been elected to serve for the term of one year, but their programme contemplated a period of two years, and certainly included four separate and distinct issues of additional stock, and the payment to one of their members of large sums of money for services to be rendered by him in connection therewith. It was in the form of a resolution—a form which may embody an absolute contract between proper parties, but usually implies a reserved right of repeal or modification by a majority of those who adopted it or of their successors, and in which, as merely declaratory of a policy to be conditionally pursued, he might properly join, as he did, but as embodying an absolute contract with himself as an individual he could not. They were all to be trustees of the existing body of stockholders, however composed, which was liable to be changed in its composition from day to day, and to which alone the power to determine the question of increasing the stock was by law committed. The resolution itself expressly anticipates such a change at an early day as might give to the new members of that body absolute control in that respect; and the fact was that before the issue of the additional $50,000 was definitely proposed, a majority of the original stock had been sold and transferred to and was held by parties who had no voice in the adoption of the resolution. Of the 990 shares for which appellant subscribed he retained only fifty, and less than

440 were held by those who assumed to confirm it. These same directors did submit that proposition to a meeting of those then holding the original stock, especially called by them for that purpose pursuant to the statute. At the same meetings at which as directors and stockholders, respectively, they re-adopted and confirmed the resolution in question, they so also adopted and confirmed a by-law, to be further noticed hereafter, by which they undertook to secure the vote of all stockholders in favor of all propositions that should be submitted by the directors for the increase of the capital stock as set forth in the resolution; and it was, doubtless, in view of this by-law that appellant gave the opinion he did that the resolution did not make the issue of additional stock obligatory, but that it was in the discretion of the directors. It also appears that some who would otherwise have opposed the proposition to issue the $50,000 in May, 1892, were constrained to vote for it under the impression that the by-law was operative and compulsory.

These facts *dehors* the resolution strongly tend to show, if they do not conclusively show, that the purpose to increase the stock, and, consequently, the plan for its execution, as therein set forth, were understood by all the parties to it, whether as directors or stockholders, to be conditional and subject to the formal approval of the stockholders in the manner prescribed by the statute.

But if this view of the resolution—which would eliminate the question of *ultra vires*—is not clearly tenable, we hold that the persons had no power, in either of their capacities, to bind appellee, or authorize the directors, in their discretion, to increase the capital stock by several distinct issues.

Whether, when, and in what amount such increase shall be made, are questions of policy, to be determined, not by the directors but by the stockholders. This is "fundamental in the law of corporation." Wheeler v. Pullman I. & S. Co., 143 Ill. 197; Eidman v. Bowman, 58 Ill. 444. The statute also gives that power to them exclusively, and expressly prescribes the manner in which it is to be exercised. Sec. 12. Appellee, like all other bodies having only a statu-

tory existence, can exercise its franchises and powers only in the manner provided by the law under which it is organized, and where one mode is so prescribed any attempt to exercise them in any other is impliedly forbidden. Fridley v. Bowen, 87 Ill. 151.

The section referred to declares that " Whenever the directors may desire to increase the capital stock, they may call a special meeting of the stockholders for the purpose of submitting to a vote of such stockholders the question of such increase. Such special meeting shall be called by delivering personally, or by depositing in the post office at least three days before the time fixed for such meeting, a notice properly addressed to each stockholder, signed by a majority of said directors, stating the time, place and object. At any such meeting, stockholders may vote in person or by proxy, each stockholder being entitled to one vote for each share of stock held by him, and votes representing two-thirds of all the stock of the corporation shall be necessary for the adoption of the proposed change of amount of capital stock. At any regular meeting, or at the time and place specified in said notice, said proposition may be submitted to a vote." (We have omitted from this quotation only what is superfluous or irrelevant here.) The section further requires that when the vote is sufficient to carry the proposition a verified certificate thereof shall be filed in the office of the auditor and of the recorder of deeds of the county where the principal business office of the corporation is located, and declares that upon such filing the change in the amount of stock so proposed and voted for shall be and is declared " accomplished in accordance with the said vote of the stockholders." The corporation is then required to cause to be published in some newspaper in or nearest the county in which their principal office is located, a notice of such change for three successive weeks.

The statute contemplates no other manner or means of increasing the capital stock. That can, therefore, be done only in the one way prescribed — by a vote of the stockholders' meeting, and certificate thereof duly verified and filed.

These proceedings do immediately "accomplish" the object, leaving nothing further to be done to that end. It is thereby "accomplished" in accordance with the vote—which is the expression of the independent and deliberate judgment and will—of the stockholders. They, and they only, can lawfully vote upon the proposition. They may do so in person or by proxy, or they may decline to vote, but unless there is an actual and affirmative vote of those representing two-thirds of all the stock the proposition is defeated. It is their absolute right to defeat it either by voting or declining to vote. The power of the directors in relation to it is limited to their duty, which is, to "submit" it to the vote of the stockholders, and to submit is " to leave or commit to the discretion or judgment of another or others." (Webster's Dictionary.)

We are also of the opinion that the proposition intended by the statute is one for a single and definite increase, which may be properly acted upon in view of present apparent conditions, as in the judgment of present stockholders it would affect their interest. They can not, by one vote, decide upon an increase of an aggregate amount in unfixed parcels at unfixed time, distributed and running through a future of two years, without regard to the judgment or will of those who in the meantime become stockholders.

As a recognition by appellant and his co-directors of the absolute right of the stockholders, by st tute, to vote upon each proposed increase of the stock and defeat it if they should see fit, we have already adverted to the facts that the issue of the $50,000 additional stock was voted for at a special meeting of stockholders called for February 5, 1892, and that they attempted to secure a like approval of every such proposition they should submit, under the limitation of the resolution, by a by-law which was as follows (Art. 6, Sec. 4):

" That all of the stock of this bank sold or transferred shall be with the express condition and understanding that it will be voted in favor of all propositions submitted by the board of directors to increase the capital stock

of this bank from time to time, not exceeding $50,000 at any one time, or within a period of sixty days, until its capital stock reaches $300,000; and that the new stock be disposed of entirely to persons, and in such amounts, as the board of directors may direct. That the provisions of this article and the by-laws of this corporation shall become a part of every contract for the transfer of any stock of this bank, and shall operate as a reservation of a limited ownership of the stock transferred to the extent of the provisions hereof made binding on the transferee by the acceptance thereof."

If this section were valid it would add nothing to the strength of appellant's case, because the directors never did submit a proposition for the future increase of the capital stock.

But we hold it to be void. By section four of the statute the directors are authorized "to make by-laws (not inconsistent with this act) for the government of the association"—that is, to prescribe the means and mode of exercising the powers and franchises conferred upon it—but neither they nor the stockholders have any power, by agreement or otherwise, to change in any respect or particular the organic law of the body. By that law the stockholders are the constituent members of that body. They own the capital stock and all other corporate property. They dictate and control the policy according to which it is used and administered. They elect the directors, who are their agents and trustees for such use and administration. Each has an absolute right to cast a free and independent vote for every share he holds, upon every proposition to increase the stock, and to transfer such shares, with all the powers and privileges annexed by the statute to the ownership, without any condition, limitation or qualification except as to the mode of doing it. These are organic features of every banking association that can be organized under the statute. They give value to the shares, and security for the protection of all the interests that may become involved, which they would not otherwise have.

This by-law, if valid, would set up a banking corporation of a very different character. Its fundamental vice is in the provision for limiting the transferability of the stock, by imposing conditions which would impair its value and weaken public confidence in the corporation, by disfranchising the holders and giving the directors power to increase it and so to place the increase as to secure their own re-election. The right of the holder to transfer his shares without condition or limitation is deemed of vital importance. All unreasonable attempts to restrain it are void as against public policy; and although an agreement between the members, or a part of them, not to sell except on certain conditions, may be valid if it does not amount to an unreasonable restraint of trade, their right " can not be restrained by a by-law of the corporation." Cook on Stock and Stockholders, Secs. 331–2 and notes.

Then the resolution here sued on is not aided by their by-law. And we hold that it in no way affects the statutory duties, rights or powers of the directors, stockholders or corporation. In respect to the issue of additional stock, it expressed only a present purpose, the execution of which was in fact and law necessarily contingent upon future conditions beyond the control of directors, stockholders or corporation, and of such purpose only on the part of the persons who expressed it. They had no authority, at that time or in that way, so to speak for the corporation. We know of no way in which it could speak on that subject except by proceedings in conformity with section twelve of the statute.

It is not pretended that this resolution was adopted or confirmed in conformity with the provisions of that section. If, then, those who so voted did not thereby bind the corporation to issue additional stock, as is conceded, nor had any power by any form of expression, so to bind it or even to declare its conditional purpose so to do, as we hold, they could not bind it to pay appellant for services in arranging for means by which it might or would be enabled to do so. Having been rendered, if they were performed, without re-

quest of the corporation, it would not be liable to pay for them except to the extent it accepted and availed itself of them, and to that extent he was fully paid before this suit was brought. As originator and promoter of the corporation, and by far the largest subscriber for its stock, he was doubtless confident that the policy and purpose indicated by the resolution of which he was the author would be carried out by the corporation, but he must be deemed to have taken the risk of its refusal and made his arrangements in view of that. Under the pressure of his influence, appellee did pursue and execute it as to the $50,000 of additional stock issued and paid him for his services in connection therewith, but with reluctance, and full notice to him that it would go no farther in that direction. If the resolution was *ultra vires*, then so far as it remained unexecuted that defense is valid.

For these reasons, we are of opinion that he had no legal claim to further compensation, and that the issues on the first and second pleas were rightfully found against him.

Of the counter-claim, under the plea of set-off, for $3,750, alleged to have been wrongfully received by him as percentage on the amount of stock that was issued, but little need be said.

It is not entirely clear that the resolution sued on contemplated the payment to him of any percentage on the amount of the original stock, and still less that he received any to his own use. He positively testified that he did not; that the credit to him on the books of $2,500 was an error, and that it was expended by him for the bank, giving the items and showing the vouchers.

The $50,000 additional stock, on which he did receive $1,250 was regularly issued. Whether he did, or failed to do, what would entitle him to payment according to the terms of the resolution, would be an unpleasant question to consider upon the evidence, and we feel relieved of the necessity of considering it, by the fact that the directors, treating what he did as a compliance on his part, actually paid him, and the corporation, so far as it could, acquiesced.

If there was a mistake of the law on either side there was no misunderstanding of the facts, and if there was any wrong or fault upon the facts it is chargeable alike and equally to both.

We are therefore of the opinion that the issue on the plea of set-off was also rightfully found, and the judgment will be affirmed.