## WHERRY, *Appellant*, v. HALE.

1. **National Banks**: DEALINGS WITH REAL ESTATE: TRUSTS. To avoid the supposed effect of certain provisions of the National Banking Act, a national bank caused certain real estate which it was taking for debt to be conveyed to an individual. *Held*, that the conveyance created a trust in favor of the bank, and a subsequent conveyance by the grantee to a trustee for a receiver of the bank, so far from being a fraud upon his individual creditors, was an execution of the trust which, if it had been refused, a court of equity would have compelled.

2. ——: ——. National banks are authorized to hold and convey such real estate as they shall purchase at sales under judgments, decrees or mortgages held by them to secure debts due them.

3. ——: ——: ULTRA VIRES. If a national bank violates the National Banking Act in dealing with real estate, the remedy is in the hands of the government only. A stranger to the transaction cannot impeach it.

*Appeal from Johnson Circuit Court.*—HON. NOAH M. GIVAN, Judge.

AFFIRMED.

*S. T. White* for appellant.

1.  The deed conveying the Sharp-Emery farm should

have been held fraudulent, voluntary and void, 1st, Because no trust was created in Ridings at the time the land came to him, and any subsequent act of the parties could only be founded upon a new consideration, of which there was no allegation or proof. 1 Perry on Trusts, § 133; *White v. Carpenter*, 2 Paige 217; *Rogers v. Murray*, 3 Paige 390. 2nd, Granting that at the inception of the estate in Ridings, the parties intended to create a trust, its purpose, according to defendant's evidence, was to evade the National Banking Law, and was illegal. The National Banking Law forbids national banks dealing in real estate securities. While this court, in *Matthews v. Skinker*, 62 Mo. 329, has differed from the United States Supreme Court, (98 U. S. 62,) as to the remedy, both courts decided that the transaction was contrary to the statute. R. S. U. S. §§ 5136, 5137. No trust can grow out of a transaction made to evade the law. Perry on Trusts, § 131; *Chapin v. Pease*, 10 Conn. 69. The defendants are estopped by the acts of the bank from claiming that the trust was an existing one, and was a good consideration for the deed. 1 Story Eq., (10 Ed.) § 384; *Meaux v. Caldwell*, 2 Bibb 244; *McDermott v. Moreland*, 19 Mo. 204; *Susong v. Williams*, 1 Heisk. 625; *Smith v. Greer*, 3 Humph. 118; *Nicholas v. Ward*, 1 Head 323.

The other deeds should have been declared fraudulent, for the reason that they were gifts on their face, and had none of the provisions of mortgages, and did not purport to secure any debts. They were mere appropriations of property. The evidence showed that the debts purported to have been secured by them were illegal. (1) The receiver had no vested interest. The land was simply placed in Hale's hands, with authority in him to sell and pay debts Ridings might owe the bank. It is the same as if Ridings had left money in Hale's hands directing him to pay certain debts. If another creditor should attach it before it was appropriated as intended, the attaching creditor could get the money. So here we attached before Hale appro-

priated it to the payment of the debts, and while he was merely a voluntary grantee, and he can set up no rights against us. (2) The debts of Ridings to the bank are illegal. The capital of the bank was $100,000. The bank claims $82,000 liabilities of Ridings to be secured. This was in violation of section 5200, U. S. R. S. *Penn v. Bornman*, 102 Ill. 523; s. c., 14 Reporter 393.

*O. L. Houts* for respondents.

Loans and discounts of a national bank are valid and recoverable although in excess of one-tenth of its capital stock. *Gold Mining Co. v. National Bank*, 96 U. S. 640; *Shoemaker v. National Bank*, 2 Abb. (U. S.) 416; *Stewart v. National Bank*, 2 Abb. (U. S.) 424; *Allen v. National Bank*, 23 Ohio St. 97; *O'Hare v. National Bank*, 77 Pa. St. 96; Thompson's Nat. B'k Cas., pp. 151, 169, 175, 828, 869. Ridings had a right to secure the bank. If, therefore, the land was his own, and not held in trust for the bank, the conveyances were valid. *Shelley v. Boothe*, 73 Mo. 74. But the trust was fully made out by the evidence. The provisions of the National Banking Act interpose no obstacle. The 28th section of the act expressly authorizes the purchase, and it might as well have been made in the name of the bank. 98 U. S. 621. It is immaterial whether the notes which the land was conveyed to secure were transferred to the bank for a past indebtedness or not, for it is held that though the transfer be for a debt created at the time, and in violation of the act, the transaction is good as against the whole world, and can be attacked only in proceedings by the government against the bank to forfeit its charter. 98 U. S. 621.

HENRY, J.—This is a suit to set aside certain conveyances of real estate made by A. W. Ridings to Hale in trust for the receiver of the First National Bank of Warrensburg, on the ground that they were without considera-

tion, and made with the intent to hinder, delay and defraud creditors.

Plaintiff, prior to the institution of this suit, had sued Ridings in attachment, under which the lands in controversy were levied upon. He obtained a judgment in that suit. The deeds from Ridings were executed and recorded, except one, before the levy of the attachment, and that deed was not recorded until after. The defendant denied the fraud, and alleged that Ridings was largely indebted to the bank, at and prior to the date of the conveyances made by him; that of said lands the bank was the real owner of a portion, and Ridings held them in trust for the bank, and conveyed them to the bank in execution of the trust and the balance to secure his indebtedness to the bank. The evidence was that the lands were all held by Ridings under deeds which expressed no trust; that he stated repeatedly that he owned the lands and the Marlatt property, which the defendant alleges he held as trustee for the bank. This land was what is known as the Sharp and Emery lands. The cashier of the bank testified that Ridings for the bank purchased the above named property, under a deed of trust given to secure notes which had been assigned to the bank. This was his understanding. Ridings paid nothing for it. The conveyance was so taken for convenience, and because attorneys advised that it was better on account of provisions of the National Banking Law, which they thought would give the bank trouble. It was the understanding of Gen. Cockrell and J. J. Cockrell that Ridings held the land for the bank, and in October, 1878, Ridings executed a writing under seal, never recorded however, declaring that he held the land for the bank. Lee W. Jack, assistant cashier of the bank, testified that the Marlatt property and the Emery farm were held by Ridings for the bank; that the attorney's receipts for the notes which were secured by the lands, were carried in the bank books as past due papers. On the other hand the bank never made any statement showing that directly or

indirectly it held any land. Its public statements of assets and liabilities, made by the bank, contained no mention of land. On the evidence the circuit court found for defendants and rendered a judgment from which this appeal is taken.

We have failed to discover any evidence to prove that Ridings' purpose in making the conveyances was to defraud his creditors. There is not a scintilla to show any participation by the bank in any fraud, even if Ridings intended it. He was indebted to the bank in the sum of $82,638.59. He was reputed to be wealthy; and Gen. Cockrell testifies that he would, if called upon, have sworn that he was worth $50,000 over and above all liabilities.

Plaintiff testifies that he lent him the money for which he sued, "on the faith that he owned this and other property." He does not say or intimate that he would not have done so, if he had known that he did not own this property, which constituted but a small portion of his reputed wealth.

The circuit court, no doubt, found that there was no fraud in the transaction between Ridings and Hale or the bank, but that Ridings held the Sharp and Emery land and the Marlatt property in trust for the bank. The repeated declarations of Ridings that he owned the lands were consistent with the reasons assigned by the bank for having him hold the lands in his own name. It would have defeated the object they had in that arrangement if it had been proclaimed that he held the lands otherwise than as the deeds expressed. This was not an arrangement made to impose upon any one, but one of convenience. Ridings paid nothing for the land, and in fact, as the testimony shows, held it for the bank, and all the evidence which seems to conflict with that view of the case, are Ridings' declarations that it was his, prompted no doubt, by a desire to withhold from the public the fact that the bank owned any lands. Holding for the bank, the conveyance of the lands to its trustee for the receiver,

1. NATIONAL BANKS dealings with real estate: trusts.

was but the execution of a trust reposed in him, which a court of equity would have compelled had he refused. *Payne v. Twyman,* 68 Mo. 339.

There was nothing in the transaction violative of the National Banking Act, nor is there any provision of that 2. ——: ——. law which would have prevented the bank from taking a deed to the property in its own name. That act authorizes such banks to hold and convey such real estate as they shall purchase at sales under judgments, decrees and mortgages held by such associations or to secure debts due to such associations. The Sharp-Emery land and the Marlatt property were sold under deeds of trust given to secure notes assigned to the bank by the holders thereof.

. But, if it had been otherwise, in the case of the *Union National Bank v. Matthews,* 98 U. S. 621, it was decided by 3. ——: ——. the Supreme Court of the United States that ultra vires. a breach of that section of the act cannot be taken advantage of by the person dealing with the bank, but only by the government. Certainly the plaintiff in this case, who was no party to the transaction, cannot impeach the transaction in question as violative of the National Banking Law.

No actual fraud having been proved to affect the conveyances, the right of Ridings to prefer one *bona fide* creditor to another cannot be questioned, and on that ground the conveyances of the property other than the Sharp and Emery land are beyond question. They were made and recorded before plaintiff's attachment was levied, and that question which has been raised as to the conveyance of the Sharp Emery lands does not arise with respect to the other property. The attachment was levied after the execution of all the deeds in question, but before the deed conveying the Sharp-Emery land was recorded.

The attachment only held Ridings' interest in the land. The conveyances made by him were not of his interest in the land. They simply conveyed to the bank what in equity

belonged to the bank before they were executed, and all fraud out of the case, there can be no question that the title of the bank was good as against creditors of Ridings. The judgment is affirmed.