The People of the State of Illinois, ex rel. Commissioners of Highways, etc., v. Board of Supervisors, et al.

Gen. No. 4,508.

1. Navigable waters—*definition of*. Navigable waters of the United States are those which, whether fresh or salt, form in their ordinary conditions, by themselves, or by uniting with other waters a continued highway over which commerce is, or may be carried on with other States or foreign countries in the customary modes in which such commerce is conducted by water.

2. Judicial notice—*of what not taken*. Judicial notice will not necessarily be taken of whether a stream is navigable or not. This, ordinarily, is a question of fact to be determined by the jury.

3. Contract—*when void*. A contract made in violation of a statute of Illinois is void and unenforceable regardless of whether the statute so declared on merely prohibits the thing contracted to be done.

4. Contract—*when party other than the United States government cannot raise question of, violating federal statute*. Only the United States government can raise the question that a contract providing for the construction of a bridge across a navigable stream, is in violation of the federal statute requiring the consent of the secretary of war to the erection of such a bridge.

5. Federal statute—*what construction given to*. The State courts follow the construction given to federal statutes by the courts of the United States.

*Mandamus* proceeding. Appeal from the Circuit Court of Whiteside County; the Hon. Emery C. Graves, Judge, presiding. Heard in this court at the April term, 1905. Reversed and remanded. Opinion filed August 1, 1905.

C. L. & C. E. Sheldon and A. A. Wolfersperger, for appellant.

C. C. McMahon, McCalmont & Ramsay and Harry H. Waite, State's Attorney, for appellees.

MR. PRESIDING JUSTICE VICKERS delivered the opinion of the court.

This is an appeal from a judgment of the Circuit Court of Whiteside County sustaining a demurrer to and dismissing a petition for *mandamus.* The sufficiency of the petition is the only question presented. We adopt the following statement of the allegation of the petition from the opinion of the learned judge who tried the case below:

" The petition in the case shows that the commissioners of the town of Sterling in 1903 decided that a bridge across Rock River, connecting the public highway in the town of Sterling, leading from Avenue ' G ' in the city of Sterling south to the river bank, and the public highway leading from Twelfth avenue in the city of Rock Falls north to the river bank, was necessary; that one end of the said proposed bridge is in Sterling township and the other end of the said proposed bridge is in Coloma township in Whiteside County, Illinois; that thereupon they, the Commissioners of Highways of said Sterling township, proceeded by proper methods to secure the co-operation of the Commissioners of Highways of Coloma township, but that the Commissioners of Highways of Coloma township refused to co-operate; that the petitioners thereupon, by proper means, procured authority from the voters of Sterling township to build the bridge and borrow the money so to do; that the cost of the bridge and the conditions as to previous assessments were such as to entitle the township of Sterling to county aid in building the bridge; that the chairman of the Board of Supervisors of the county of Whiteside appointed a committee to act with the Commissioners of Highways in the construction of the bridge, which appointment was afterwards ratified by the county board; that the bridge and approaches were contracted for and built and was, at the time of filing the petition, substantially completed; that the cost of the bridge and approaches, including the fees paid a civil engineer, is $73,000; that the township of Sterling has placed in the hand of the commissioners one-half of that amount; that demand has been made on the county board to make an appropriation to pay one-half of said amount, and that the Board of Supervisors of said county refused to · make such appropriation.

"The petitioners then pray for a writ of *mandamus* to compel the county board to make an appropriation of $36,500 to pay one-half of the cost of such bridge and

approaches, and, if necessary, to levy a tax to secure the amount appropriated."

Counsel for appellees insist that Rock River is a navigable stream at the point where the bridge in question is built, and that the court should judicially take notice of its navigable character without proof or averment, and in consequence of this fact the petition is fatally defective in not averring that the consent of Congress had been secured to the building of the bridge or that the plans had been submitted to and approved by the Chief of Engineers or the Secretary of War, as required by Act of Congress, approved March 3, 1899.

Section 9 of said act is as follows:

"That it shall not be lawful to construct or commence the construction of any bridge, dam, dike, or causeway over or in any port, roadstead, haven, harbor, canal, navigable river or other navigable water of the United States until the consent of Congress to the building of such structure shall have been obtained, and unless the plans of the same shall have been submitted to and approved by the Chief of Engineers and by the Secretary of War; provided, that such structure may be built under the authority of the legislature of a state across rivers and other waterways, the navigable portion of which lie wholly within the limits of a single state, provided the location and plans thereof are submitted to and approved by the Chief of Engineers and by the Secretary of War before construction is commenced; and provided further, that, when plans for any bridge or other structure have been approved by the Chief of Engineers and by the Secretary of War, it shall not be lawful to deviate from such plans either before or after completion of the structure, unless the modification of said plans has previously been submitted to and received the approval of the Chief of Engineers and the Secretary of War."

Section 12 of said act imposes a penalty by fine of not less than $500 nor more than $2,500 and imprisonment in case of natural persons of not exceeding one year, in the discretion of the court. The court below sustained the position of appellee and held that the petition was defective in failing to aver a compliance with the federal statute in

relation to bridges over navigable streams, and held that Rock River, at the point in question, was a navigable stream and that its character in this regard was such that the court ought to take judicial notice of it.

The power of Congress to regulate commerce between States, includes the power to regulate navigation upon the navigable waters of the United States and to keep such waters open and free for commercial intercourse between the people of the different States. This power has been exercised by the Federal Government by the passage of various public laws, of which the act of March 3, 1899, is an illustration. The object to be accomplished by the passage of this statute is to prevent obstructions being placed across navigable water courses so as to hinder or obstruct interstate commerce. The navigable waters of the United States are those which, whether fresh or salt, form in their ordinary conditions, by themselves, or by uniting with other waters, a continued highway over which commerce is, or may be carried on, with other States or foreign countries in the customary modes in which such commerce is conducted by water. Gould on Waters, Sec. 34, and cases there cited. Whether a given stream falls within this definition is a question of fact and when called in issue is to be determined by the jury from the evidence. New England Trout Club v. George Mather, 68 Vt. 338; Treat v. Lord, 42 Me. 552; Jones v. Johnson (Texas Civ. App.), 25 S. W. 650; Rhodes v. Otis, 33 Ala. 578; Railroad v. Ferguson, 105 Tenn. 552; Toledo Shooting Club v. Erie Shooting Club, 90 Fed. Rep. 648; Gaston v. Mace, 25 Am. St. Rep. 848; Martin v. Bliss, 5 Blackf. 35; Ligare v. C., M. & N. R. R. Co., 166 Ill. 249; J. & C. R. R. Co. v. Healy, 94 Ill. 416. In the case last above cited the Supreme Court considers the evidence and finds as a matter of fact that "Healy Slough" is not a navigable stream within the meaning of the law. See same case, 116 U. S. 191, where our Supreme Court is affirmed.

It is true that the navigability of a river may be so generally known that courts will take judicial notice of its character, but this does not change the question from one

of fact to one of law.   Matters of which courts take judicial
notice are matters of fact which, from their notoriety, all
well informed persons are supposed to know.   Rivers like
the Mississippi and Ohio are so generally known to be
navigable that courts may safely act on that assumption,
without proof; still the navigability of those rivers is a fact
of the same class as the navigability of any small stream
about the character of which the most serious contention
may exist.   The difference is, we apprehend, that in one
case the fact is well and generally known, while in the other
case it is subject to doubt and controversy; when in issue,
one the court knows judicially, while the other must be
alleged and proven.   Neaderhouser v. State, 28 Ind. 257.
The law which allows the court to act upon the existence
of facts without proof should be applied with caution and
never extended to facts about which any reasonable doubt
exists.   Ency. of L., 2nd ed., vol. 17, 894; Miller v. Texas
R. R. Co., 83 Texas, 518.

In the case at bar there is no averment in the petition
that Congress had consented to the building of the bridge
or that the plans had been submitted to and approved by
the Chief of Engineers or the Secretary of War, but on the
assumed fact that Rock River is a navigable stream of the
United States at the point where the bridge is built, the
demurrer has been sustained and the petition dismissed.   A
large number of extrinsic facts have been incorporated into
the brief of counsel for appellees, purporting to be the data
upon which the trial judge based his judicial knowledge;
these consist in part of letters, excerpts from newspapers
and old histories and affidavits of citizens, all of which re-
late to some fact tending to show that many years ago
there had been some attempts to navigate the waters of
Rock River.   On the other hand it is asserted by appellant
that numerous bridges and dams obstruct the river, both
above and below the present bridge, and that the channel
of the river is obstructed by sand bars so that any navi-
gation of the same is impossible and that no attempt to
use it for such purpose has been made for half a century.

The People v. Board of Supervisors.

All these matters we regard as outside the record and cannot properly be considered by us. If they were properly in the record they would serve to show that a very serious controversy exists over the question of fact as to the navigability of Rock River.

Even if it be conceded that upon a trial of the issue of fact the verdict should be in accordance with the conclusion reached by the trial judge, still it does not follow that the decision can be sustained. If the court takes judicial notice of a disputed fact and predicates a judgment thereon, the effect in all such cases is to cut off the right of the party against whom the decision is made, to introduce evidence and t be heard. This right should never be taken away except as to facts of such a public and notorious character that no reasonable doubt can be entertained as to their existence. It will not do to say that the character of streams of water as respects their navigability can never become the subject of judicial investigation, as a question of fact before a jury. If the court must take judicial notice of all streams that can be shown to be navigable, it follows that all others must be judicially known not to be navigable. This would result in putting the court in many cases to the necessity of conducting an investigation of facts outside the record to determine what the fact is in order to decide whether the court should judicially take notice that the stream was navigable or non-navigable. The exercise of such functions by a court in cases of doubt would be subversive of the right of trial by jury, abridge privilege of parties to be heard and establish precedents that are inimitable to the spirit of our laws and institutions.

Counsel for appellees confidently assume that if it be conceded that the stream in question is navigable and the bridge was built without a compliance with the United States statute above quoted, that it follows as a matter of law the contract is void and no action can be maintained thereon, and numerous cases in this State are cited to support this view. The rule established in this State undoubtedly is that a contract made in violation of a

statute of Illinois is void and unenforceable, regardless of whether the statute so declares or merely prohibits the thing contracted to be done. Linn v. State Bank of Illinois, 1 Scam. 87; Nash v Monheimer, 20 Ill. 215; Lewis v. Headley, 36 Id. 433; Cincinnati Mutual Health Insurance Co. v. Rosenthal, 55 Id. 85 ; Village of Dwight v. Palmer, 74 Id. 295.

While this rule is firmly established and uniformly applied whenever a contract is made contrary to the statutes or public policy of the State, still when the claim is that the act is void because contrary to the laws of the United States, the State courts will follow the construction given to the federal statute by the court of the United States. Sutherland on Stat. Construction, sec. 22; Haseltine v. Central Nat. Bank, 155 Mo. 66; Board of Trustees v. Cuppett, 52 Ohio St. 567 ; York v. Conde, 147 N. Y. 486.

In Fridley v. Bowen, 87 Ill. 151, it was held that a real estate mortgage taken by a national bank to secure a present loan was by implication prohibited by the national banking law and was therefore void. This case was decided in 1887. Two years later the question of the validity of a real estate mortgage, taken to secure a present loan, came before the Supreme Court of the United States in the case of Union National Bank v. Matthews, 98 U. S. 188, and it was there held that the mortgage was not void and could be enforced against the mortgagor, notwithstanding the bank violated the banking law and incurred the penalties when it took the same.

Since that time the question has been before the United States Supreme Court a number of times, and the doctrine has been steadily maintained by that court and followed by the State courts. See National Bank of Genesee v. Whitney, 103 U. S. 99; Swope v. Leffingwell, 105 U. S. 3; Reynolds v. National Bank, 112 U. S. 405; Fortier v. National Bank, 112 U. S. 439; Fifth National Bank v. Pierce, 117 Mich. 376; First Nat. Bank v. Elmore, 52 Iowa 541; Farmers & Merchants Nat. Bank v. Robinson, 53 Pac. Rep. 762 (Kan.); Wherry v. Hale, 77 Mo. 20; Graham v. Nat. Bank of N. Y., 32 N. J. Eq. 804.

We cannot find that the question has been presented to our Supreme Court since the case of Fridley v. Bowen, *supra*, was passed on, but we have no doubt if the question were again presented the doctrine of the Fridley case on this point would be overruled. There is a clear intimation to this effect in Penn v. Bornman, 102 Ill. 523, where it is said: "While we do not feel at liberty to follow Fridley v. Bowen in its construction of the National Bank Act, yet we fully approve of the general principles announced in it as applicable to analogous cases arising under our own statutes." The Supreme Court of the United States has held this same doctrine applicable to other statutes. In Harris v. Runnels, 12 How. 79, it is said : "The statute must be examined as a whole, to find out whether or not the maker meant that a contract in contravention of it was to be void, so as not to be enforced in a court of justice." In this case it is held that a note given for a slave and taken into a foreign State in violation of the statute, is valid. See also, Fairfax v. Hunter, 7 Cranch, 604. In Logan Co. Nat. Bank v. Townsend, 139 U. S. 67, the bank had received bonds from Townsend under a contract which the bank had no power to make. Townsend brought suit for the value of the bonds, and the bank set up the want of power in the bank under the law to make the contract, and it was held the bank could not hold the proceeds of the contract and at the same time rely on its want of power to make the same. In Marsh v. Fulton County, 77 U. S. 676, the court said : "The obligation to do justice rests upon all persons, natural and artificial, and if a county obtains the property or money of others without authority, the law independently of any statute will compel restitution or compensation." If no action can be maintained against the county of Whiteside for its share of the cost of the bridge, the result will be the contractors whose labor and money have constructed the bridge will be compelled to lose it. If this is a case where the consent of congress should have been obtained to the building of the bridge, the public authorities of the county should have procured

such consent. To permit the county, by its own failure of duty in this regard, to retain the benefits of the contract and refuse payment on the ground of its own neglect to proceed in accordance with the act of congress, is so manifestly unjust and inequitable that it should not be permitted to do so, unless it is imperatively required by the mandates of the law.

So far as we are advised no case has been decided by the United States Supreme Court involving the act of 1899 or contracts made in violation thereof, but if the doctrine applied in other similar cases is adhered to, it would seem that the holding must be that the contract is binding and enforceable and that the government alone can raise the question that the act of congress has been violated.

In the view we take of this case the averment for want of which the demurrer has been sustained is neither necessary nor proper, and if the same matter should be presented by way of answer it would constitute no defense to the action. For the reasons above given the judgment is reversed and the cause remanded.

*Reversed and remanded.*