(No. 1647—)

K. & S. MANUFACTURING COMPANY, Claimant, *vs.* STATE OF ILLINOIS, Respondent.

*Opinion filed December 5, 1932.*

WATKINS, TEN HOOR & GILBERT, for claimant.

OSCAR E. CARLSTROM, Attorney General; CARL DIETZ, Assistant Attorney General, for the State.

Mr. JUSTICE THOMAS delivered the opinion of the court:

Claimant's demand is for $36,985.78 damages it alleges it suffered because the Department of Public Welfare failed to comply with the provisions of a contract made with claimant on June 5, 1929. On August 19, 1929, the Attorney General advised the Director of the Department of Public Welfare that the contract was void and the department thereupon refused to proceed further with the matter. The contract is in evidence. The first party is the Department of Public Welfare and the second party is claimant. The contract contains the following provisions:

"It is hereby agreed and understood the party of the second part contracts with the party of the first part for the output of the furniture plant located at Stateville, Illinois, and the product to be manufactured in a line of cribs, bassinets and novelty furniture, the same as is now being manufactured by the party of the second part in their own plant. The party of the second party hereby agreed to pay the party of the first part cost of material and labor used in the manufacture of the above mentioned furniture, the labor to figure on a basis of fifteen cents per hour per man, employed six hours or more per day, and in addition to the above are to pay 10 per cent on the items of labor and material, the intent being the State to make a 10 per cent profit, plus cost of labor and material on prices agreed upon, provided, that in the event the party of the second part should furnish the materials used in any particular production, no charge shall be made by the State for materials in such production." The contract further provides that claimant will accept and pay for at least $760,000.00 worth of merchandise manufactured under its terms, and as much more as the State can furnish up to $1,000,000.00, for each twelve months of the life of the contract, and recites: "Party of the second part will furnish and be responsible for a general superintendent of the plant, who is to have full supervision and his salary is to be paid by the party of the second part. If it should be found necessary, for legal reasons, to have him appear as a State employee the State's payment will be purely nominal." There are other provisions in the contract but in our view these are the most important and the ones necessary to be considered in arriving at a proper decision of the questions involved in the case.

The State contends the contract is void because it contravenes the provisions of the Constitution and the statute regulating the employment of prisoners. Claimant insists that it is not contrary to any constitutional or statutory provision and that the State is liable to pay it all damages it suffered on account of the failure of the Department of Public Welfare to comply with its provisions.

The fourth amendment to the Constitution became effective November 22, 1886, and is as follows: "Hereafter it shall be unlawful for the commissioners of any penitentiary, or other reformatory institution in the State of Illinois, to

let by contract to any person, or persons, or corporations, the labor of any convict confined within said institution." The language of this provision is plain, and its purpose can not be misunderstood. It was intended to prevent prison labor from entering into competition with free labor. No legislative enactment was necessary to its operation. Any contract the effect of which is to let the labor of the prisoners is in violation of this clause of the Constitution and wholly void, and no cause of action can be based upon it. No court will lend its aid to enforce a contract entered into with a view of carrying into effect anything that is prohibited by law. (*Ambrose* vs. *Root,* 11 Ill. 497; *Paige* vs. *Hieronymus,* 192 Ill. 546.) "The rule established in this State undoubtedly is that a contract made in violation of a statute of Illinois is void and unenforceable, regardless of whether the statute so declares or merely prohibits the thing contracted to be done." (*The People* vs. *Board of Supervisors,* 122 Ill. App. 40 and cases where cited.) The contract in question is for the "output"—the entire production—of the furniture plant of the State at the Stateville prison, and all claimant is bound to pay for the output is the cost of the labor at 15 cents per hour, plus 10 per cent thereof which is in effect 16½ cents per hour. While the contract recites claimant is to also pay the actual cost of the material used, plus 10 per cent of such cost, it also provides "that in the event the second party should furnish the materials used in any particular production, no charge shall be made for the State for materials in such production." Under this clause of the contract claimant had the right to furnish the material, and if it exercised that right all it would pay the State would be for the labor entering into the products. The contract is clearly one for the labor of the prisoners, and the fact it is called a contract for the production or "output" of the prison factory does not change its legal effect. The goods were to be manufactured in the prison by prison labor for claimant and under claimant's supervision. It is obvious from the language of the contract that the purpose of claimant was to secure cheap prison labor in the manufacture of goods of the same kind then being manufactured in its own plant. These goods were cribs, bassinets, and novelty furniture. The contract is clearly prohibited by the fourth amendment to the Constitution and is void.

It is urged by claimant that under Section 11 of the Act to regulate the employment of convicts and prisoners the Department of Public Welfare had the right to enter into the contract. That Act was passed in 1903 and later was amended. At the time this contract was executed Section 3 of the Act contained the following provisions: The Board of Prison Industries shall see "that under no circumstances, shall any of the products of the labor of said convicts or prisoners mentioned in this Act, be sold upon the open market, except as hereinafter provided. They shall see that the said products do not enter into conflict with any of the established industries of the State except as hereinafter provided. It shall be their duty at all times, to inform themselves, so far as possible, of the industrial conditions of the State of Illinois, and to see that the labor of said convicts and prisoners does not enter into competition with the products of free labor, except as herein provided." Section 5 provided the Board of Prison Industries "shall not, nor shall any other authority whatsoever, make any contract by which the labor or time of any prisoner or convict in any penitentiary or reformatory of this State or the product or profit of his work shall be contracted, let, farmed out, given or sold to any person, firm, association or corporation; except that said prisoners or convicts in said penal or reformatory institutions may work for, and the products of their labor may be disposed of to the State, or for or to any public institution owned or managed and controlled by the State." Section 6 declared "that it shall be the policy of the State to use in such industries no more machinery or motive power, other than hand or foot power, than may be required to carry this Act into effect." Section 10 of the Act required the prisoners to be employed for the State, or in productive industries for the benefit of the State, or for the use of public institutions owned or managed and controlled by the State." Section 11 provides that the labor of prisoners "after the necessary labor for the manufacture of all needed supplies for said institutions shall be primarily devoted to the State and the public institutions and buildings thereof, and the manufacture of supplies for the State and public institutions and buildings thereof, and secondly to the school and road districts of the State and the public institutions thereof: But, provided, that if the demands of the State, the State institu-

tions and the school and road districts thereof, as herein provided, shall not be sufficient to furnish employment to all the prisoners of the penal and reformatory institutions of the State, then the Board of Prison Industries may and are hereby authorized to dispose of the surplus products of such labor to the best advantage of the State.'' It is clear from the language of these various provisions of the law that the intention of the legislature was to prevent the competition of prison labor with free labor; that it intended the prisoners should be employed in such work and in the manufacture of such articles as could be used by the State, the institutions of the State and the school and road districts of the State so that the products of their labor would not enter into goods sold on the open market to the general public. The law is in harmony with the letter and spirit of the fourth amendment to the Constitution. The contract in question violates the letter and spirit of both that amendment and this Act. It is an apparent attempt to evade their provisions. It is axiomatic that one cannot do indirectly what he cannot do directly.

It is urged that the contract was made in good faith, and that if it violates the law claimant and the officials of the Department of Public Welfare did not know it. They will not be heard to say they were ignorant of the Constitution and laws of their State. (*Lewis* vs. *Headley,* 36 Ill. 433.) It would seem, however, they must have had some doubts as to the validity of the contract for it recites that if it should be found necessary, *for legal reasons,* to have the superintendent of the plant appear as a State employee the State's payment will be purely nominal.

It is urged that Section 11 gives the prison officials the right to dispose of the surplus products of the prison industries. It will not be assumed that the legislature intended to give the prison officials authority to do what the Constitution prohibits. It is manifest from a reading of all the sections of the Act that the intent of the legislature was to have the labor of the prisoners confined to the production of supplies that were needed by the State, State institutions and school and road districts. The legislature could not authorize, and it will not be assumed that it intended to authorize, the prison officials to deliberately create a vast surplus for the purpose of disposing of it on the open market in competition with free

labor. It was their duty to inform themselves as to the needs of the State and State institutions and to produce only such articles as the State and State institutions, school and road districts used, and to confine such production to their estimated needs. It is only such surplus that may remain after having done this that they are permitted to sell.

It is urged that similar contracts to this had been entered into by the prison officials before and for that reason this one should be held valid and enforceable. This contention cannot be sustained. Even if the Department of Public Welfare had been executing similar contracts for a period of years such fact would not render them valid. Long usage of an assumed right to do an Act does not make it valid where the Act done is clearly prohibited by law. These provisions of the Constitution and statute were enacted by the people for the purpose of declaring the public policy of the State relative to prison labor, and they cannot be ignored or set aside by public officials because the officials may think them unwise.

It is suggested that claimant has an equitable right to an award because it relied upon the State furnishing the goods and suffered loss because of its failure to do so. No right, either legal or equitable, can be founded on a contract prohibited by law. The contract being in violation of the Constitution and statute is void. There is no exception to this rule. Claimant is not entitled to an award, and the cause is dismissed.

Claimant has filed a petition for a rehearing. The petition is merely a reargument of the reasons urged by claimant in its original brief for the allowance of its claim. Every question raised in the original brief and petition for rehearing was carefully considered by the court, and decided in the opinion filed.

On August 19, 1929, the Attorney General gave Honorable Rodney H. Brandon, the Director of Public Welfare, an opinion in which he held the contract relied on by claimant to be illegal and void. He has filed an answer to the petition for rehearing recommending an allowance of $30,625.90 to claimant, although he states in his answer that he still adheres to that opinion. As this court also holds the contract to be in violation of the Constitution and statute of the State it follows no award can be made. The petition for a rehearing is therefore denied.